STATE OF NEBRASKA, APPELLEE, V. WILLIE FRANKLIN,
APPELLANT.

234 N. W. 2d 610

Filed October 30, 1975.   No. 40044.

Michael T. Levy, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

CLINTON, J.

The defendant was charged with kidnapping, rape, and sodomy in violation of sections 28-417 and 28-408, R. S. Supp., 1974, and section 28-919, R. R. S. 1943, respectively. He was found guilty by a jury and sentenced to confinement in the Nebraska Penal and Correctional Complex for a term of 3 to 5 years on the first charge, 7 to 10 years on the second charge, and 4 years on the third. All the charges involved the same victim and were part of one continuous transaction. The judgment provided that the terms should be served consecutively.

On this appeal the errors assigned are: (1) The trial court erred in overruling the defendant's plea in abatement before trial, which plea was founded upon the premise that the evidence at a preliminary hearing was insufficient to bind the defendant over for trial. (2) The court erred in overruling the defendant's motion to suppress evidence seized in a search of the defendant's automobile and in admitting such evidence at the trial. (3) The court erred in admitting over objection testimony that the defendant had, 3 weeks prior to the date of the alleged offense, committed or attempted to commit an act of sodomy with another person at about the same place where the rape and sodomy charged here are alleged to have occurred. We affirm.

A summary of the evidence introduced by the State, absent many details, will give the background necessary for a discussion of the errors assigned. On October 11, 1974, during the noon hour, the victim, a girl student, aged 16, whom we will hereafter refer to by the term victim, was waiting at a bus stop at 23rd and Burt Streets in Omaha, Nebraska, in the process of trans-

ferring from one bus to another. While she was waiting a black male, later identified as the defendant, Franklin, stopped his automobile, a 1965 brown Buick Riviera, and asked the victim if she wanted a ride. She declined. He repeated the invitation. When she again declined he drew a small caliber hand gun and ordered her into the car. She complied. He directed her to roll up the window and lock the door. He then drove to a nearby self-serve gas station. At that point he told her that if she created a disturbance or attempted to get away he would shoot her. He then got out of the car, placing the hand gun in his belt inside his coat, purchased some gasoline, and drove away with the victim still in the car.

The subsequent activities and journey, which meandered through northeast Omaha to Carter Lake and finally to Hummel Park, consumed about 4 hours. It was during this time that the various and repeated sexual attacks accompanied by violence and threats occurred. The last attack took place outside the car in the woods of Hummel Park. The victim testified that she resisted the defendant's attacks, but finally had to submit. She was frightened that he would shoot her. She had previously discussed with her mother the possibility of sexual attack and had been advised to kick, scream, and fight if the attacker had no weapon, but that if he had a gun, knife, or club she should attempt to talk the attacker out of his purpose. The victim testified that she did not attempt to run away because she was afraid she would be shot.

During some part of the journey, the defendant took from the victim a piece of paper on which she had written her name and telephone number for a school friend but which she had not used because the friend had not come to school that day. After the defendant obtained this paper, he dropped it and ordered her to give him another. She complied by writing on a second sheet of paper her first name and an old teen telephone number no longer used. As an afterthought she added

her correct number, thinking that if the defendant did in fact use it, it might lead to his identification. These two slips of paper were both later found in the search of the defendant's car.

During the journey the victim saw an automobile registration slip attached to the visor of the car. She noted and remembered the name Franklin and a portion of an address, 224 Pratt Street.

At about 4:30 p.m. the defendant drove the victim to a point near her home and while the car was still in motion she got out and ran. The defendant drove rapidly away. The victim then went into a nearby drugstore where she met a slight acquaintance who accompanied her to her home. There she told a younger sister (her parents were not yet home from work) what had happened. The sister immediately called the police. A policeman arrived a few minutes later just after her mother came home. The victim was crying and greatly upset. She was immediately taken to a hospital where she was examined and treated. The examination tended to verify her story of abuse although no male sperm was found upon examination and tests.

During the course of the police investigation which followed, it was discovered that a person who lived in the Hummel Park area had seen the defendants' car in Hummel Park about 4 o'clock p.m. It was then occupied by a black male and a long-haired female. At that time the male was striking the woman. When the car left at high speed the observer followed and obtained the license number, Nebraska 1-DD471. This information, plus the defendant's description and the other information furnished by the victim led to the arrest of the defendant on October 13, 1974, when his unoccupied car was found on 24th Street between Burdette and Grant Streets. The police waited there and when the defendant appeared and got into the car they asked for identification. It was furnished by the defendant and he was promptly placed under arrest. Later at the

police station the victim viewed Franklin in a lineup and promptly and positively identified him as the kidnapper and attacker.

The facts in connection with the search of the defendant's automobile will be summarized later when we discuss the search and seizure issue. Certain .22 caliber shells and the slips of paper bearing the victim's name and telephone numbers, which we earlier mentioned, were the subject of a motion to suppress and after a hearing thereon the motion was denied and the exhibits were received at trial over objection. Also received was the automobile registration slip found in the car at the time of the arrest. It bore, along with the other usual information, the name of the defendant, Willie Franklin, and the address 2224 Pratt Street.

The caretaker of Hummel Park was called to testify. He stated that on October 11, 1974, the date of the alleged crimes, he was patrolling a portion of Hummel Park on foot at about 3:30 or 4 o'clock p.m., even though it was an off-duty day for him. While so doing he came upon an unoccupied brown Buick Riviera at a place in the park referred to as South Point. He saw no one and did not go into the woods as he had his good clothes on. He looked into the car. There were some books in the front part of the car. (The victim had testified that she had her school books with her.) He noted the license number DD 471. He then testified that he had seen the same car at about the same location in the park 3 weeks earlier. On that occasion he heard some shouting, cussing, and arguing coming from the woods and he walked into the woods and saw a naked man. At that point in the trial, defense counsel made objection and bench discussion took place. The court overruled counsel's objection and the witness was permitted to continue describing what he saw. The substance of the additional testimony was that the man he then observed was the defendant and that he was engaged in or attempting an act of fellatio with a woman.

The caretaker ordered the persons out of the park and they complied.

Immediately after this testimony, defense counsel moved for a mistrial. The court denied the motion, but after an overnight recess and before further testimony was taken, the court, after identifying the testimony to which it was referring, told the jury that the court had erred in admitting the testimony, that it now sustained the objection made and was ordering the testimony stricken from the record, and stated: "And I must also, as I said before, advise and admonish and caution you solemnly and seriously to disregard all testimony stricken from the record, and I would particularly advise and caution you to disregard that testimony entirely."

After further prosecution testimony the State rested. The defendant presented no evidence in his own behalf and for his defense relied upon the presumption of his innocence, the burden of proof which rested upon the State, and attacks by cross-examination upon the credibility of the prosecutrix.

Prior to entry of his plea to the merits, the defendant filed a plea in abatement in which he asserted that the evidence adduced at preliminary hearing was insufficient to authorize the magistrate to bind him over for trial in District Court. This contention was decided adversely to the defendant by the trial court and his motion was overruled. On this appeal the defendant assigns the overruling of the motion as error. The State meets the assignment directly by asserting that the evidence at the preliminary hearing was sufficient. The assignment might be dealt with on appeal by again reviewing the sufficiency of the evidence. Deciding the matter in that way, however, could be misleading. If the evidence is determined to be sufficient no problem arises. However, if it were determined insufficient could we, after trial and conviction on evidence which was clearly sufficient to permit the jury to find the defendant guilty beyond a reasonable doubt, reverse and order a new

trial because the evidence at a preliminary hearing was insufficient to show either that the crime was committed or that there was probable cause to believe the defendant committed it? The latter course would seem highly irrational.

In Kruger v. Brainard, 183 Neb. 455, 161 N. W. 2d 520, we adopted a rule of practice as follows: "The sufficiency of the evidence at a preliminary hearing may be raised only by a plea in abatement filed in the criminal proceeding in the district court." Previous to our holding in Kruger, the sufficiency of the evidence to bind a defendant over for trial could be challenged either by a plea in abatement or by proceedings in habeas corpus. Jahnke v. State, 68 Neb. 154, 94 N. W. 158, reversed on other grounds, 68 Neb. 181, 104 N. W. 154; Hoffman v. State, 164 Neb. 679, 83 N. W. 2d 357; Kruger v. Brainard, *supra*. The usual practice had been to challenge the evidence by proceeding in habeas corpus. No doubt, the reason for that choice by those accused was so that there could be an appeal from an adverse ruling before defendant was forced to trial by a jury. The overruling of a plea in abatement is not a final order from the overruling of which there can be a direct appeal. Gartner v. State, 36 Neb. 280, 54 N. W. 516.

If the magistrate and the District Court have erred, the error is cured where sufficient evidence to convict is adduced at trial. The practical effect of our holding in Kruger v. Brainard, *supra,* may be to make a ruling against the defendant on the sufficiency of the evidence essentially unreviewable by this court after the trial court has on a plea in abatement reviewed the evidence and determined it to be sufficient. On appeal to this court the question then becomes, was the evidence sufficient to support the jury verdict?

Our decision in Kruger v. Brainard, *supra,* was not the result of inadvertence, but of mature consideration and designed to avoid the evils of delay, proliferation of litigation, and piecemeal review. These ends are ac-

complished without detriment to the right of the defendant not to be brought to trial where evidence is not sufficient to support the filing of an information. That objective is protected by giving the defendant a right, through an appropriate plea in abatement, to a review of the sufficiency of the evidence by the District Court before trial.

In Jahnke v. State, *supra*, we said: "We are disposed to the view that the true test [of probable cause] should be whether in fact there was a hearing as to the crime charged in form and substance as contemplated by the statute, *and whether the evidence introduced at such hearing is such as to invoke an honest exercise of judicial discretion, a bona-fide judgment or determination on the part of the examining magistrate* by weighing and considering such evidence in arriving at a conclusion as to the order or judgment to be entered; and if such is the case, then it can not be said that a preliminary examination, within the meaning of the statute, which will support the filing of an information in the district court, has not been had." (Emphasis supplied.) This test can be satisfied just as well through a hearing on a plea in abatement as by a proceeding in habeas corpus.

We know of no principle which would require this court to entertain a pretrial appeal of the trial court's review of the decision of the magistrate binding the defendant over after a preliminary hearing. It would appear that our statutory provisions for preliminary hearings and our rule of practice under which the trial court itself reviews the magistrate's determination are clearly sufficient to meet the constitutional mandates of the Fourth Amendment to the Constitution of the United States. See Gerstein v. Pugh, 420 U. S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54.

We reiterate our previously established rule that the sufficiency of the evidence at a preliminary hearing may be raised only by a plea in abatement filed in the

criminal proceeding in the District Court. We further hold that after trial and conviction in the District Court any error in the ruling of the District Court on the plea in abatement is cured if the evidence at trial is sufficient to permit the jury to find guilt beyond a reasonable doubt.

The defendant next argues that the warrantless search of his automobile violated his constitutional rights and that therefore his motion to suppress the evidence found in the search should have been sustained.

We sustain the validity of the searches on the authority of State v. Agnew, 184 Neb. 700, 171 N. W. 2d 542 (1969); Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); and Coolidge v. New Hampshire, 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

In Cady v. Dombrowski, 413 U. S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973), the Supreme Court of the United States said: ". . . the decisions of this Court dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web.". We will not attempt through detailed analysis of the above-cited opinions to make a seamless web from the authorities upon which we rely. We simply set forth what we believe are the pertinent, important circumstances surrounding the search and seizure in this case and quote or summarize from the authorities cited the facts and principles which, in our judgment, support the conclusion at which we arrive.

The defendant Franklin was arrested in his automobile on a public street 2 days after the crime occurred. That there was probable cause for the arrest is amply demonstrated by the facts we have earlier summarized. At the time of the defendant's arrest the police knew he had used that automobile as one of the instruments of his crime and that he had used, in the

course of his acts, a small hand gun which he had kept both on his person and in the automobile. The record does not demonstrate that the defendant had, up to the time of his arrest, any reason to believe that he had been identified by the police as the perpetrator. Therefore, it was not unreasonable to assume that the gun might still be on the person or in his vehicle. Immediately upon the arrest and at the scene the car was searched. At that time the .22 caliber shells were found. The record supports the conclusion that the officer in charge at the scene did not make as thorough a search as he would have liked and that he interrupted the search because of the apparently unfriendly crowd which had gathered. The search was completed after the car had been towed to the police lot and immediately after the officer had completed his written report of the arrest. At that time the slips of paper on which the victim had written her name and telephone numbers were found in the glove compartment of the car. Precise time of this search is not shown by the record, but a reasonable conclusion is that it occurred within an hour or two of the arrest and that it was accomplished without avoidable delay.

Let us now examine the authorities.

In Carroll v. United States, *supra*, federal undercover agents, who had probable cause to believe that a certain automobile was being used to transport illegal alcoholic liquors, acting without a warrant, stopped the car and searched it. They found contraband liquor. They then arrested the occupants. The Supreme Court of the United States held that the evidence was admissible and justified the search as reasonable on the ground that probable cause existed and that the mobility of the vehicle created an exigent circumstance.

In Chambers v. Maroney, *supra*, a gas station was robbed by two men. Two teenagers told the police they had seen a blue station wagon circling the block on which the station was located and saw the car speed

away immediately following the robbery. They saw one of the men in the car wearing a green sweater. The station attendant said one of the men who robbed him was wearing a green sweater. Within an hour the police stopped a car fitting the description. Defendant was in the car and was wearing a green sweater. The occupants of the car were arrested and apparently the police drove the station wagon to the station. The police later searched the car without a warrant and found evidence which was introduced at defendant's trial.

The Supreme Court of the United States found the evidence was admissible. The court there did not justify the search as incident to an arrest. Quoting from Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964), the court noted that: " 'Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.' " Then, after noting that probable cause for an initial arrest and search at the scene had existed, the court said: "The probable-cause factor still obtained at the station house and so did the mobility of the car . . . ." The court concluded that under the facts in Maroney, an immediate warrantless search or a later warrantless search following seizure of the automobile were equally permissible. It said: "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment. . . . The probable-cause factor still obtained at the station house and so·did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search·

without a warrant and the car's immobilization until a warrant is obtained."

In Coolidge v. New Hampshire, *supra*, the Supreme Court of the United States considered a somewhat different set of facts. There the defendant was suspected of having murdered a young girl. Defendant took a lie detector test which was inconclusive. The police spent the next 2½ weeks gathering evidence of the crime. When they had ample evidence, the police applied to and received a warrant from the State Attorney General to search defendant's two cars which were located in the driveway of his residence. The police then arrested defendant at his home. Police would not let defendant's wife use either car because they had been "impounded." Two and one-half hours after defendant was taken into custody the cars were towed to the station and subsequently searched. Evidence was found and entered at defendant's trial. The Supreme Court found the warrant issued by the Attorney General was invalid, treated the search of the cars as a warrantless search, and held the evidence found in the search inadmissible. The court, however, approved both Carroll and Maroney, saying: "Since Carroll would not have justified a warrantless search of the Pontiac *at the time Coolidge was arrested,* the *later search* at the station house was *plainly illegal,* at least so far as the automobile exception is concerned." (Emphasis supplied.) The court then continued, stating: ". . . where the police may stop and search an automobile under Carroll, they may also seize it and search it later at the police station. . . . It is true that the actual search of the automobile in Chambers was made at the police station many hours after the car had been stopped on the highway, when *the car was no longer movable, any 'exigent circumstances' had passed,* and, for all the record shows, there was a magistrate easily available. . . . The rationale of Chambers is that *given* a justified initial intrusion, there is little difference between a search on the open

highway and a later search at the station." (Emphasis supplied.)

State v. Agnew, *supra*, is on point in the case we have under consideration. In Agnew, a witness saw two men breaking into a service station in the early morning. The men put a cash register in the trunk of the car, a green Triumph convertible. The witness also noted the men were accompanied by a woman. A description of the car went out shortly after the robbery and the car was stopped within an hour near the scene of the crime. After the men were searched all three were arrested and taken down to the station and a policeman apparently drove the Triumph to the same place. After the arresting officers had processed the three, they searched the car without obtaining a warrant (about 20 minutes after arriving at the station). This court found the warrantless search was valid because it was "substantially contemporaneous with the arrest." The court also found that exigent circumstances justified a delay in the search. It was raining and the car and police vehicles were on a public highway, blocking traffic.

We hold that where, as here, there is probable cause for the arrest of an accused in his motor vehicle on a public highway, as well as probable cause for the search of the vehicle at that time, a search a short time later while the vehicle is still in police custody is not unreasonable even though made without a warrant and the fruits of such search need not be suppressed.

The defendant's third assignment relates to the admission of the park caretaker's testimony that the defendant had committed another act of sodomy with a different person 3 weeks prior to the act charged. It is the usual rule that in a criminal prosecution evidence of crimes committed by the accused, other than that with which he is charged, is not admissible. State v. Brown, 190 Neb. 96, 206 N. W. 2d 331. An exception to the above rule is that evidence of similar offenses

is admissible where an element of the crime charged is motive, a particular criminal intent, or guilty knowledge. State v. Ray, 191 Neb. 702, 217 N. W. 2d 176; State v. Young, 190 Neb. 325, 208 N. W. 2d 267; State v. Rich, 183 Neb. 128, 158 N. W. 2d 533. The State concedes that no such motive, criminal intent, or guilty knowledge is an element of the crime here charged. Another exception to the general rule is that in prosecutions for rape, incest, and sodomy, testimony that the defendant committed the same or similar acts against the prosecutrix is admissible for its corroborative value. Smith v. State, 127 Neb. 776, 257 N. W. 59. Evidence of similar crimes with third persons is not admissible. Henry v. State, 136 Neb. 454, 286 N. W. 338; Nickolizack v. State, 75 Neb. 27, 105 N. W. 895.

The State seems to acknowledge error, but argues that the error was, in this case, without prejudice and that the offering of the evidence by the prosecutor was not a deliberate or very careless attempt by the State to introduce inadmissible testimony and therefore granting a new trial is not justified. In State v. Atwater, 193 Neb. 563, 228 N. W. 2d 274, we reversed a robbery conviction and remanded the cause for a new trial even though admissible evidence of guilt was strong because evidence of prior crimes was "deliberately" and by "very careless" procedures injected by the prosecution. The State urges that the prosecutor's offer of the testimony was not a deliberate and a very careless injection of evidence known to be inadmissible. It argues that the prosecutor could have concluded that our holdings in Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380; and Abbott v. State, on rehearing, 113 Neb. 524, 206 N. W. 153, made such evidence admissible. In Onstott v. State, *supra*, a prosecution for statutory rape, we stated that evidence of other criminal acts of the same sort, occurring shortly before or after the act charged, is admissible to explain the act charged or corroborate

the testimony of the prosecutrix. We there approved without comment the admission of testimony that the defendant had, at about the time and place of the offense charged, committed statutory rape with persons other than the prosecutrix. In Abbott v. State, *supra*, we said that in a prosecution for sodomy, former instances tending to show that the accused had indulged in such a depravity essential to an act like that charged may, in the discretion of the trial court, under exceptional circumstances, be admitted in evidence in connection with direct proof of his guilt. Onstott v. State, *supra*, of course has no direct application to the crimes here charged. Whether Abbott v. State, *supra*, should have application, we do not decide because it is clear that here the trial court itself concluded that it should not have admitted the testimony in question and that it had abused its discretion. It then attempted as best it could to correct what had been done. We are further persuaded that the prosecution did not deliberately attempt to introduce testimony which it clearly knew was inadmissible.

Although admission of the evidence may be deemed erroneous, reversal and a new trial are not required. The evidence of guilt in this case, both direct and corroborative, is very strong and practically conclusive. The statutes of this state direct: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, [finds] that no substantial miscarriage of justice has actually occurred." § 29-2308, R. R. S. 1943. See State v. Bartlett, *ante* p. 502, 233 N. W. 2d 904. We conclude upon an examination of the whole record that no substantial miscarriage of justice has actually occurred and will therefore not re-

verse the conviction even though the admission of the testimony was erroneous.

AFFIRMED.

WHITE, C. J., not participating.
NEWTON, J., concurs in the result.