STATE OF NEBRASKA, APPELLEE, v. JAMES R. MOORE, APPELLANT.

249 N. W. 2d 200

Filed December 29, 1976.   No. 40557.

Frank B. Morrison and Bennett G. Hornstein, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before WHITE, C. J., BOSLAUGH, CLINTON, and BRODKEY, JJ., and REAGAN, District Judge.

BRODKEY, J.

Defendant, James R. Moore, was convicted by a jury of robbery, rape, and sodomy of Margaret Anne O'Hara, the prosecutrix, and also of the use of a firearm in the commission of those offenses. He was sentenced by the court to serve a term of 15 to 30 years imprisonment on the robbery charge; and to 3 to 10 years imprisonment on the charge of using a firearm in the commission of a felony, those sentences to be served consecutively. Sentencing was deferred on the rape and sodomy convictions; and the District Court subsequently found the defendant to be a sexual sociopath who could not presently be benefited by treatment, and committed him indefinitely to the Nebraska Penal and Correctional Complex, subject to periodic evaluations. In this appeal, defendant asks this court to reverse his conviction and remand the cause for a new trial, his sole assignment of error being that the District Court committed reversible error by admitting into evidence the testimony of one Lorna Jean Nicholson regarding an independent robbery of her and her husband allegedly committed by the defendant approximately 1 month prior to the robbery and other events involved in this case. We affirm.

The facts of this case are not in dispute, and may be summarized as follows. At approximately 12:30 a.m., on June 27, 1975, the prosecutrix and Gregory O'Brien were in their home in Omaha, reading in bed. An intruder entered the house, confronted the two occupants with a gun, and demanded money and jewelry. After taking the money and jewelry the prosecutrix produced, the assailant forced O'Brien to lie face down on the bed, and bound him with the prosecutrix' pantyhose. He then removed the prosecutrix' clothing, forced her to lie face down on the bed, and anally raped her. The

suspect thereafter forced the prosecutrix to the living-room, where he again anally raped her and attempted normal intercourse. Finally, the intruder returned to the bedroom with the prosecutrix, again anally raped her, and also successfully completed vaginal intercourse. The assailant threatened the prosecutrix with a gun the entire time, sometimes holding it to her head, and advised her that her life depended upon her performance. The intruder then left, threatening to return and kill the victims should they call the police. The prosecutrix observed an automobile, described as a 1968 Oldsmobile or Pontiac with a bad exhaust system, being driven away from her house by one occupant.

The police were called after the prosecutrix and O'Brien went to the home of some friends, and the prosecutrix was taken to a hospital for an examination. The doctor who performed the examination found evidence of sperm in the vaginal area, and two parianal lacerations in the rectal area.

The victims of the crimes described their assailant as a short black man with enormous shoulders and a muscular build. They described him as wearing a bizarre tan cap which came down over the ears and forehead, checkered pants, and tennis shoes. The assailant's gun was described as having a cylinder and white handle. The property stolen included earrings, a small amount of money, and a number of pennies, which the intruder placed in one of O'Brien's white socks.

**The description the victims gave fit that of the defend-**ant, who was questioned by the police. A police officer obtained permission to search the defendant's apartment and the apartment of his girl friend the day after the crime. The officer found a gun with a white handle and cylinder, clothes which fit the description given by the victims, some earrings, and a white sock full of pennies. The victims subsequently identified the clothing as being similar to that worn by the assailant; identified the gun as being like that used against them;

positively identified the earrings as being those taken by the assailant; and identified the sock the pennies were in as being like that taken on the night of the robbery. The number of pennies in the sock was approximately the same number that was taken. The police officer also testified that the imprint of a tennis shoe found in the defendant's apartment matched a footprint found outside the prosecutrix' home.

A line-up was held the night after the crimes, and both the prosecutrix and O'Brien picked out the defendant as being similar in physical build and facial features to their assailant. They did not make a positive identification, however, both exhibiting concern that they did not wish to accuse the wrong man. At trial, both witnesses again stated that the defendant was similar to the men who committed the crimes, and the prosecutrix stated that she was "almost positive" the defendant was the man, although she was not "one hundred percent positive."

Other evidence at trial showed that the prosecutrix had picked out the defendant's automobile in a parking lot as being similar to the automobile she observed on the night of the crimes. The defendant's automobile had a bad exhaust system, as did the car which was driven from the scene of the crime.

Finally, Mrs. Lorna Jean Nicholson testified on behalf of the State, over the objection of the defendant. She stated that on May 6, 1975, a man entered her home in the early morning hours when she and her husband were preparing to retire. The man burst through the front door, entered the bedroom, and demanded money, threatening the Nicholsons with a gun and knife. The intruder, whom Mrs. Nicholson positively identified as the defendant, forced Mr. Nicholson to lie face down, and bound him with nylons taken from the dresser. He then forced Mrs. Nicholson to give him all the money in the house. Mrs. Nicholson identified the gun found in the apartment of the defendant's girl friend as being

similar to the gun used in the robbery committed
against her. The State offered this evidence to show
common design, motive, and intent on the part of the
defendant in relation to the crimes charged in the pres-
ent case.

The defendant's sole assignment of error in this case
is that the District Court committed reversible error in
denying his motion to exclude the testimony of Mrs.
Nicholson regarding the independent robbery allegedly
committed by the defendant. The defendant, in support
of this contention, relies on the general rule that in a
criminal prosecution evidence of crimes committed by
the accused, other than that with which he is charged,
is not admissible. State v. Hoffman, 195 Neb. 200, 237
N. W. 2d 403 (1976); State v. Franklin, 194 Neb. 630,
234 N. W. 2d 610 (1975). The reason for this rule is
that such evidence is apt to prejudice the defendant in
that the jury may convict a defendant because he has a
propensity for crime in general, and not because of his
specific guilt of the offense with which he is charged.
State v. Casados, 188 Neb. 91, 195 N. W. 2d 210 (1972).

The general rule, stated above, is, however, subject
to many well-recognized exceptions which have been es-
tablished and followed in this state, as well as in most
of the other states. We have held that evidence of a
separate and distinct crime committed by the accused
is admissible in the prosecution of a crime that has an
element of a motive, criminal intent, or guilty knowl-
edge. Sall v. State, 157 Neb. 688, 61 N. W. 2d 256 (1953).
Where prior offenses of the accused are sufficiently
similar to the one charged in the case on trial so that
the evidence thereof has probity as to intent, motive,
or knowledge, such evidence may be received, and the
issue of whether such evidence should be received is
generally one left to the discretion of the trial court.
Sall v. State, *supra*. See, also, State v. Ray, 191 Neb.
702, 217 N. W. 2d 176 (1974); State v. Kirby, 185 Neb.
240, 175 N. W. 2d 87 (1970); State v. Hoffmeyer, 187

Neb. 701, 193 N. W. 2d 760 (1972); State v. Rich, 183 Neb. 128, 158 N. W. 2d 533 (1968). Another exception to the general rule is that the evidence of another crime is admissible if it establishes a course of conduct, scheme, design, or intent. State v. Hoffmeyer, *supra*. Finally, evidence of another crime is admissible if it is relevant to establishing the identity of the accused. State v. Sharp, 184 Neb. 411, 168 N. W. 2d 267 (1969); State v. Brown, 190 Neb. 96, 206 N. W. 2d 331 (1973). The new Nebraska Rules of Evidence are in accord with these principles. Section 27-404(2), R. R. S. 1943, provides as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We find that the testimony concerning the Nicholson robbery in this case was relevant and material, and was properly admissible under the exceptions to the general rule set forth above. The robbery in this case and the Nicholson robbery were similar in design, nature, and method of operation. In both, the robber entered a home in the early morning hours, demanded money at gun point, and bound the male victim with nylon stockings. In both the intruder threatened the victims with a gun. The evidence of the other crime in this case tended to establish the defendant's method of operation, use, and possession of a particular weapon, and identity.

The defendant contends that the sole purpose of the evidence of the Nicholson robbery was to bolster the State's case because the victims of the crime charged did not make an absolutely positive identification of the defendant. Even if this is true, evidence of other crimes committed by a defendant may be admitted into evidence if they are relevant to the issue of identity. See,

generally, State v. Sharp, *supra;* State v. Brown, *supra.* Other jurisdictions are in accord with this view. See Annotation, Admissibility, in robbery prosecution, of evidence of other robberies, 42 A. L. R. 2d 854, § 5, p. 861, and supplements thereto. In White v. State, 533 S. W. 2d 735 (Tenn. Crim. App., 1975), a robbery case, the court held that evidence of other similar robberies committed by the defendant was admissible to establish the identity of the defendant where the tactics in the other robberies showed a method of operation employed by that defendant. In Hicks v. State, 232 Ga. 393, 207 S. E. 2d 30 (1974), also a robbery case, the court upheld the admission of evidence of other similar robberies on the ground that it was relevant to the issues of identifying the defendant as the guilty party and showing motive, plan, scheme, bent of mind, and course of conduct. We believe these cases are sound, and support our conclusion in this case.

We hold, therefore, that the evidence of the Nicholson robbery was properly admitted into evidence in this case. In so holding, we are aware of the potential prejudice that such evidence creates in cases where the other crime is not similar to, and not relevant to, any of the elements of the crime charged. Our prior cases make clear that the general rule excluding evidence of crimes other than the one charged is to be followed unless the facts in the case clearly warrant application of the exceptions outlined above. See, State v. Atwater, 193 Neb. 563, 228 N. W. 2d 274 (1975); State v. Franklin, *supra;* State v. Casados, *supra.* In this particular case the exceptions do apply, and the judgment of the District Court must be affirmed.

AFFIRMED.

CLINTON, J., concurring in the result.

I concur in the result. I think the evidence of the other crime in this case was admissible because it was relevant in establishing the identity of the accused. I find the portion of the discussion in paragraph 10 of the

majority opinion, beginning with the words, "We have held" and concluding with the citation, "158 N. W. 2d 533 (1968)," wholly unnecessary and confusing because the opinion purports to rely upon all the "principles" discussed.