STATE OF NEBRASKA, APPELLEE, V. MARTY R. TOMRDLE, APPELLANT.

335 N.W.2d 279

Filed June 10, 1983. No. 82-584.

Avis R. Andrews, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

Shanahan, J.

Marty R. Tomrdle was charged with burglary, Neb. Rev. Stat. § 28-507 (Reissue 1979), convicted, and sentenced to 5 to 10 years for the commission of that offense. Tomrdle assigns errors of the District Court as follows: (1) Failing to direct a verdict in favor of Tomrdle at the conclusion of the State's case; (2) Overruling a motion in limine; (3) Overruling a plea in abatement; and (4) Abuse of discretion regarding the sentence imposed. The proceedings and judgment in the District Court are affirmed.

After drinking beers throughout the late hours of November 4, 1981, Ricky Marsoun, Kenneth Burger, and Tomrdle were riding around Fremont in Marsoun's van. They had heard that a 1955 or 1957 Thunderbird, a vintage automobile, was stored in the barn on the "Diers place" approximately 1 mile outside Fremont. Sometime after midnight, the trio drove to the Diers place. Marsoun testified that there was then a possibility that parts would be taken from the Thunderbird. Marsoun parked the van on a public road near the Diers place, and, under cover of fog, the trio walked to the barn. Neither Tomrdle nor his companions had permission to be on the Diers place. On arrival at the barn Burger pushed open a door; Tomrdle and his companions entered the barn through the opened door; and there they found the disassembled Thunderbird. When the three departed 15 minutes later, they carried out the "hard top" and the "soft top" of the Thunderbird and, additionally, its tires, fender skirts, wheel rims, and hood. The threesome loaded the parts in Marsoun's van and left. Tomrdle was dropped at his place in Fremont. Marsoun and Burger then drove to Snyder, Nebraska, and stored the parts in Marsoun's garage. Marsoun later shipped the Thunderbird parts to Texas for sale; the parts were sold; and Marsoun received and cashed a check as payment for the parts.

The first error assigned relates to the trial court's overruling a motion for acquittal or dismissal of the charge so that the question of guilt was thereby submitted to the jury. In Nebraska the rule concerning an accused's right to a directed verdict was stated in *Wanzer v. State*, 41 Neb. 238, 242, 59 N.W. 909, 910 (1894), as follows: "It is only when there is a total want of proof to support a material allegation of the information, or where the testimony in a criminal case is of so weak or doubtful a character that a conviction based thereon could not be sustained, that a court will be justified in directing a verdict of not guilty." A motion for a directed verdict of acquittal can be sustained only if there is no substantial evidence reasonably tending to support the charge against the accused. Cf. *State v. McClelland*, 162 N.W.2d 457 (Iowa 1968).

Tomrdle claims that he was entitled to the directed verdict of acquittal at the end of the State's case because there was no evidence that he intended to steal any property located in the barn. Intent is a subjective element of a crime, that is, it exists in the mind of the perpetrator. In crimes of burglary it is the exceptional case in which there is direct evidence that the accused possessed the felonious intent which must be established beyond a reasonable doubt in order to sustain a conviction of burglary. Most recognize that burglars usually do not publicize or declare their intent concerning any breaking and entering. Therefore, the felonious intent necessary for a conviction of burglary may be proved by circumstantial evidence. *State v. Rich*, 183 Neb. 128, 158 N.W.2d 533 (1968). There is no categorical condemnation that circumstantial evidence is so worthless and untrustworthy that such evidence cannot be the basis for a conviction of a crime. Cf. *Oseman v. State*, 32 Wis. 2d 523, 145 N.W.2d 766 (1966).

Applying these rules to the evidence which existed at the conclusion of the State's case, we must see whether there was sufficient evidence to warrant

submitting the case to the jury. We have a situation where Tomrdle and his companions on a foggy night went to the barn which they knew contained a valuable, vintage automobile. After 15 minutes inside the barn they methodically removed those parts which could most easily be transported in the van which was parked at some distance from the barn. When considered together, the foggy weather, the lateness of the hour, and the location of the parked van were circumstances from which a jury could reasonably infer that the trio did not want anyone to observe their activities at the Diers place. Nocturnal entry into a building known to contain property is a circumstance from which a jury may infer an intent to steal. In *Hebb v. State*, 10 Md. App. 145, 149, 268 A.2d 578, 581 (1970), the Maryland court held: "[T]he evidence was sufficient to convict . . . . The attempt by the appellants to enter a storehouse (which they knew carried a substantial inventory) in the nighttime . . . was sufficient to support a rational inference that they intended to steal everything of value that they could find and carry away."

Likewise, in *Mirich v. State*, 593 P.2d 590, 593 (Wyo. 1979), facts similar to the present case justified a conviction of burglary under the statement: "The law is well settled and widespread that where one breaks into the property of another in the nighttime, an inference may be drawn that he did so with the intent to commit larceny. A reasonable mind recognizes that people do not usually break into and enter the building of another under the shroud of darkness with innocent intent and that the most usual intent is to steal. . . . Defendant had been in the building and knew its contents. Knowledge of what a structure contains, coupled with an attempt to enter it, supports a rational inference of intent to steal whatever is of value within the building." See, also, *State v. Allnutt*, 261 Iowa 897, 156 N.W.2d 266 (1968).

The automobile parts removed from the barn were

shipped to Texas and sold. Such disposition after the burglary is a circumstance from which larcenous intent can be inferred. In this respect Tomrdle's situation is much like *People v. Rollins*, 119 Ill. App. 2d 116, 255 N.E.2d 471 (1970), where the defendant helped carry away a television set and an accomplice later attempted to sell the stolen television. As expressed by the Illinois court: "Indeed, what could be more probative of an intent to commit theft here than the removal of the television set from the owner's house to the apartment whence defendants had just come and, so, too, proof of the television's ultimate disposition—sale? Proof of an intent to deprive an owner of a given article would include proof of the article's sale and anything in between." *Id.* at 126-27, 255 N.E.2d at 475. In *Simmons v. State*, 493 S.W.2d 937 (Tex. Crim. 1973), there was testimony from an accomplice that the defendant and he had committed the burglary; had stored the goods at the defendant's house; and had tried to sell part of the goods. Such evidence was permissible in support of a conviction of burglary with intent to commit theft.

Tomrdle contends that under the circumstances presented to the jury the State was not able to rule out every hypothesis of innocence. It may be open to question that any reasonable hypothesis other than guilt might be extracted from a midnight prowl in the fog of rural Dodge County, which culminates in an unauthorized entry into a building from which valuable automobile parts are taken. Nonetheless, as expressed in *State v. Buchanan*, 210 Neb. 20, 28, 312 N.W.2d 684, 689 (1981): "One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt." The evidence presented by the State, when considered as a whole, raises more than just a suspicion that Tomrdle's unauthorized entry was

made with the intent to commit theft, and the evidence was sufficient to submit the case to a jury for its verdict. Cf. *State v. Witte*, 280 Minn. 116, 158 N.W.2d 266 (1968). The trial court was correct in overruling Tomrdle's motion for a directed verdict.

As the next error, Tomrdle asserts that the District Court should have sustained the motion in limine, which sought to prohibit the State from adducing evidence about the transportation and sale of the stolen property.

A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. Cf. *State v. Bennett*, ____ R.I. ____, 405 A.2d 1181 (1979). As explained in *Lagenour v. State*, 268 Ind. 441, 450, 376 N.E.2d 475, 481 (1978): "[I]t is not the office of a motion *in limine* to obtain a final ruling upon the ultimate admissibility of evidence . . . but is rather to prevent the proponent of potentially prejudicial matter from displaying it to the jury, making statements about it before the jury, or presenting the matter to a jury in any manner until the trial court has ruled upon its admissibility in the context of the trial itself." As noted in *Twyford v. Weber*, 220 N.W.2d 919, 923 (Iowa 1974): "It [the motion in limine] serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial. . . . It is not a ruling on evidence and should not, except on a clear showing, be used to reject evidence. It adds a procedural step to the offer of evidence."

In the present case, as the trial progressed, the witness for the State was asked about the transportation and sale of the stolen property, but there was no objection by Tomrdle. As clearly pointed out in *State v. Garrett*, 183 N.W.2d 652, 655 (Iowa 1971): "[T]he very purpose of the motion in limine is to receive an advance ruling on anticipated objectionable material . . . . [A] denial of a motion in limine . . . cannot, in and of itself, constitute reversible error

. . . . The reason is simple. The objectionable material has not yet reached the jury's ears. It may never reach the jury." In the same mode is the ruling in *Twyford v. Weber, supra* at 924, that "where the motion is denied and opposing counsel attempts to ask the questions challenged in the motion . . . a proper objection at that time is necessary to preserve the right to complain on appeal . . . . Stated otherwise, where the motion is denied the movant must base his complaint on the trial record."

When the trial court in this case overruled the motion in limine, it was incumbent upon Tomrdle to make an objection to the particular evidence sought to be adduced or offered by the State. But there was no such objection. A defendant cannot predicate error on the admission of evidence to which no objection was made at the time the evidence was adduced. Cf., *State v. Weiland*, 186 Neb. 325, 183 N.W.2d 244 (1971); *State v. Holloman*, 197 Neb. 139, 248 N.W.2d 15 (1976). Consequently, because there is no objection in the record, there is no question to be examined on appeal to this court. Also, the District Court's ruling, that is, the denial of the motion in limine in this case, is not an appealable order.

The third assignment of error is assigned to the trial court's overruling a plea in abatement. In *State v. Franklin*, 194 Neb. 630, 638, 234 N.W.2d 610, 615 (1975), it was held: "We further hold that after trial and conviction in the District Court any error in the ruling of the District Court on the plea in abatement is cured if the evidence at trial is sufficient to permit the jury to find guilt beyond a reasonable doubt." There was such evidence from which a jury could and did draw the reasonable inference of Tomrdle's guilt beyond a reasonable doubt. As stated in 24A C.J.S. *Criminal Law* § 1889 at 903 (1962): "Proceedings before Trial in General. Error in proceedings before trial which does not prejudice the rights of the accused or result in a denial of justice does not constitute a ground for re-

versal." See, also, *State v. Minamyer*, 12 Ohio St. 2d 67, 232 N.E.2d 401 (1967); *The People v. Petruso*, 35 Ill. 2d 578, 221 N.E.2d 276 (1966). Tomrdle does not state in what manner there has been any substantial prejudice to him or how any rights or defenses have been denied as a result of overruling the plea in abatement. Consistent with our holding in *State v. Franklin, supra*, in the absence of demonstrated prejudice to the accused and in view of the jury's verdict based on sufficient evidence, the trial court's rejection of a plea in abatement will not be reversed by this court.

In his final assignment of error Tomrdle claims that the sentence of 5 to 10 years is excessive. The trial court did not have information about the disposition of proceedings against any of Tomrdle's accomplices. There are no comparative sentences available regarding Tomrdle's accomplices. The information in the presentence report informed the court that Tomrdle was 23 years old at the time of the offense; that he was convicted of several misdemeanors in the recent past; that he was not married; that in April 1978 he was convicted of burglary and placed on probation for 18 months; and that, therefore, the offense of which he is now convicted occurred approximately 3½ years from the time of his last conviction for burglary and approximately 2 years from completion of probation. In view of the rather short interval between completion of probation and commission of the current offense, another term of probation appears to be futile. The sentence under the circumstances is in order. Cf. *State v. Tweedy*, 197 Neb. 851, 251 N.W.2d 380 (1977).

Having reviewed the record and finding no error and having considered the sentence imposed to be reasonable under the circumstances, the judgment of the trial court is in all respects affirmed.

AFFIRMED.