STATE OF NEBRASKA, APPELLEE, V. LEROY CASADOS,
APPPELLANT.
195 N. W. 2d 210

Filed March 3, 1972. No. 38161.

Charles F. Fitzke and James T. Hansen, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

The defendant, Leroy Casados was convicted of child stealing and sentenced to 3 to 5 years imprisonment.

The "child," who was the State's chief witness, was a female not quite 18 years old at the time she ran away from home. She met the defendant several months before while she was working part-time as a waitress at a cafe in Minatare, Nebraska, her home. The defendant, Leroy Casados, was 28 years of age and worked with his brother in a garage. The complaining witness testified that she told the defendant some of her problems from time to time, including problems with her family. These conversations occurred at the cafe where she worked.

Sometime in late September 1970, the defendant told her that he was going to Denver in a few days and offered to take her to Colorado and help her get started there. She decided to leave home. On the morning of October 2, 1970, she drove to Scottsbluff, Nebraska, left her car in a hospital parking lot, and left Nebraska with the defendant in his car. She testified that up to this time everything was done of her own free will, and she went with the defendant willingly. They drove to Cheyenne, Wyoming, and spent the night with friends of the defendant. The next day they drove to Denver, Colorado, where they stayed for approximately one month with Louise Trujillo, a sister of the defendant. During this period, the defendant Casados was gone for days at a time. In early November of 1970, the complaining witness moved to the apartment of Carol Stoner in Lakewood, Colorado, a suburb of Denver. While there, the complaining witness got a job as a waitress for a few days. On November 25, 1970, the defendant agreed to

drive her home. He took her to Kimball, Nebraska. She called her parents, who came and picked her up there.

The complaining witness had many opportunities to go home or to let her whereabouts be known. She did not at any time during her absence communicate or attempt to communicate with her parents.

The defendant was charged with child stealing under section 28-418, R. R. S. 1943. The relevant portion of that statute reads as follows: "Whoever maliciously or forcibly or fraudulently leads, takes or carries away or decoys or entices away any child under the age of eighteen years, with intent unlawfully to detain or conceal such child from its parents * * * shall be imprisoned * * *." That statute has remained unchanged since 1901.

The defendant first asserts that Mexican-Americans have been systematically excluded from service on juries in Scotts Bluff County, Nebraska. We have recently held that the Nebraska system of selecting jurors is clearly within constitutional limits and that a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. See State v. Gutierrez, 187 Neb. 383, 191 N. W. 2d 164. Here there is no evidence to establish that a Mexican-American surname is an accurate criteria for measuring the percentage of the class in the general population. There is also no information whatever as to the number of Mexican-American surnames on voter registration lists from which jury panels are drawn. While figures as to school populations may have some rough significance, there is no evidence to establish its relationship to general population data. The fact that over a period of 4½ years only 8 out of 439 persons on jury panels in Scotts Bluff County had Mexican-American surnames is insufficient to establish even a prima facie case of discrimination in jury selection in the absence of a specific showing as to the percentage of Mexi-

can-Americans on the voter registration lists. Neither does it become the burden of the State to establish that there was no discrimination until at least a prima facie case of discrimination has been established. See Turner v. Fouche, 396 U. S. 346, 90 S. Ct. 532, 24 L. Ed. 2d 567.

The defendant was charged with the crime of child stealing, committed on October 2, 1970. The essence of the crime was maliciously taking or carrying away, with intent to unlawfully detain or conceal the "child" from her parents. On a number of occasions throughout the trial, the State elicited from the complaining witness testimony that after the defendant had driven her out of the State of Nebraska on October 2, he committed other specific crimes over a period of some 7 weeks thereafter. There were vigorous objections on the part of the defendant's counsel and various motions for mistrial were made. They were overruled and the evidence admitted. The county attorney and the court indicated outside the presence of the jury that the evidence as to those crimes was admissible for the purpose of proving the necessary intent for the crime of child stealing. There was no indication to the jury that the evidence was being received only for that limited purpose. The evidence also involved some instances of sexual intercourse without force. There is no showing as to the age of consent in Colorado and even if we should indulge the presumption that the law is the same as in Nebraska, there might or might not be a crime involved. Our discussion is limited to the evidence of crimes other than the specific crime charged.

As a general rule, evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. Evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged. See State v. Easter, 174 Neb. 412, 118 N. W. 2d 515.

In many instances, courts have limited such evidence

to proof of prior similar acts. Other courts have extended it to include similar acts occurring after the particular crime charged, provided there was at least one former act. In any event, proof of another distinct substantive crime is not admissible in a criminal prosecution unless there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue.

"Peculiarly applicable to criminal cases is the rule which prohibits the introduction of evidence of other wholly independent offenses as the basis for an inference that the defendant is guilty of the offense for which he is being tried. * * * One basic reason for the rule is that such evidence is apt to be given too much weight, rather than too little, by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged." 1 Jones on Evidence (5th Ed.), § 162, p. 290. See, also, 2 Wigmore on Evidence (3d Ed.), § 302, p. 200.

Here the evidence of other distinct crimes after October 2, 1970, might be relevant to establish malice or the necessary intent to constitute the crime of child stealing. The complaining witness testified that the defendant committed forcible rape and forcible sodomy on two or three occasions. In view of the extensive testimony as to other sexual conduct between the defendant and the complaining witness over a 7-week period which the jury was permitted to consider, there is serious question as to whether this uncorroborated testimony as to these two crimes was relevant to establish the specific malice or intent required for the crime of child stealing with which he was charged, or whether it was introduced to establish that the defendant was a "bad man." The connection and relevance of such testimony should be weighed carefully by the trial court in view of the general rule excluding evidence of other crimes.

The evidence here also included testimony of the com-

plaining witness charging the defendant with possession, procuring, furnishing, and using several different kinds of illegal drugs on various occasions. Clearly this evidence could not ordinarily establish the necessary malice or intent for the crime of child stealing with which the defendant was charged, nor did it tend to establish any essential fact in issue. In the context of this record, this testimony was inflammatory and had no proper relevance to establish the commission of the crime for which the defendant was charged. The rule excluding such evidence of other independent crimes is one of the distinguishing features of our common law jurisprudence and it rests on fundamental demands for justice and fairness which nourish the roots of our whole system of justice. The admission of this evidence was prejudicial and requires reversal.

The defendant also asserts that the remarks of the prosecutor in final argument to the jury were improper, misleading, and prejudicial to the extent of constituting misconduct and depriving the defendant of a fair trial. The State's response is to assert that where no record is made of the closing arguments at trial, a conviction should not be set aside on the ground of improper statements of the prosecutor in closing argument. In this case, however, while no record was made at the time, the parties have stipulated as to what occurred during final argument, and that stipulation is before us as part of the bill of exceptions. The record reveals that during his final argument, the prosecutor referred to the defendant as a "despicable" person, to which objection was made; that the county attorney argued that the evidence showed the defendant was the most lowly person the jury would have occasion to judge, to which objection was made; and that the prosecutor during final argument argued that the evidence showed the defendant was a pimp and that the evidence showed what a pimp was, to which objection was also made. In each instance, the court merely admonished the jury

that it was to disregard any statement made by counsel which was not supported by the evidence. It is specifically stipulated that in no case did the court direct the jury to disregard any of the remarks made by the prosecutor but that he did instruct the jury to consider only those remarks supported by the evidence.

Inflammatory or vindictive remarks by a prosecutor during a closing argument often are not considered sufficiently prejudicial to constitute error. It is difficult to analyze the dividing line between prejudice and lack of it. Courts are invariably quick to condemn all such practices, even where they find no prejudice. In this case, the evidence of defendant's guilt of child stealing was not overwhelming. Nevertheless, that was the specific crime with which he was charged and the comments to the jury clearly do not refer to such an offense but to the evidence of other crimes to which reference has already been made. Timely objection was made by defense counsel but the court did not even order the jury to disregard the statements. The trial judge merely directed the jury to disregard any statements not supported by the evidence. In the absence of a strong rebuff by the trial court, the inflammatory nature of the prosecutor's remarks is apparent.

It is a fundamental concept of our criminal law that an accused, whether guilty or innocent, is entitled to a fair trial. It is not only the duty of the trial court but of the prosecutor as well to see that he gets one. A prosecution solidly based upon the law and the facts and supported by sound reasoning does not require bolstering by appeals to passion and prejudice. The argument here clearly violated one or more of the subsections of Standard No. 5.8 of the American Bar Association Standards Relating to the Prosecution Function. Part V of the American Bar Association Standards Relating to the Prosecution Function, dealing with the trial and specifically Standards 5.1 to 5.10, inclusive, are appropriate and proper standards and should be complied with by

prosecutors in the trial of criminal cases.

As recently as State v. Smith, 187 Neb. 152, 187 N. W. 2d 753, this court stated: "It is the duty of a prosecuting attorney to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, no matter how guilty he may be. * * * Where the defendant has been prejudiced, the conviction will be set aside." While each case must be determined on its own facts, the combination of circumstances here persuades us that the defendant did not receive a fair and impartial trial.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

SPENCER, J., WHITE, C. J., and BOSLAUGH and NEWTON, JJ.

We join in the opinion of the court, with the understanding that the evidence of the sexual relations of the defendant with the child were admissible to ·prove motive.