312 A.2d 190.

## State *vs.* Gerlardo Mastracchio.

DECEMBER 5, 1973.

Present:  Roberts, C. J.. Paolino, Kelleher and Doris, JJ.

DORIS, J. These are two indictments. One indictment charges Gerlardo Mastracchio and Nicholas A. Palmigiano with robbery. The other indictment charges Mastracchio and Palmigiano with the murder of John Glendinning. The indictments were consolidated for trial, which was held in the Superior Court before a jury. On June 30, 1970 the jury returned a verdict of guilty against each defendant on both indictments. Each defendant was sentenced to life imprisonment on the murder indictment. On the robbery indictment each defendant's sentence was deferred. Both defendants subsequently filed a bill of exceptions. We are now considering the exceptions of defendant Mastracchio.

On April 10, 1969, at approximately 8 a.m., a Brink's armored truck left its terminal on Cargill Street in the city of Providence and headed for the plant of H. P. Hood & Sons located on Harris Avenue in Providence. In the truck was the driver Joseph B. Bova, and two armed messengers, James A. Sullivan and John Glendinning. Included as part of the truck's cargo was a suitcase containing $10,000 in cash which was to be used to cash the checks of Hood's employees. The procedure called for Glendinning to go to a second-floor office at the Hood plant and use the $10,000 in the suitcase to cash the employees' checks.

The truck left the terminal, proceeded by way of Carpenter Street to Dean Street to a railroad bridge which exits on Harris Avenue. Just prior to the bridge, the occupants of the truck observed a Honda motorcycle just ahead

of the truck. The operator of the Honda wore a white helmet and a dark jacket. The motorcycle made a U-turn and parked in a driveway adjacent to Brownell & Field Company, which is next to the Hood Company plant.

When the truck stopped at Hood's, Sullivan alighted from the truck, entered the Hood building and inspected the stairway to the second floor. He returned to the sidewalk and indicated to Glendinning that everything was in order. Glendinning then took the suitcase containing the $10,000 in cash, left the truck and entered the building. Sullivan returned to the truck and was preparing to depart for the next stop, when a woman ran from the doorway shouting, "They're holding him up." Gunfire was heard, and shortly a person carrying a gun and the suitcase that Sullivan had last seen in the possession of Glendinning, ran from the doorway to the sidewalk. The person wore a wig and sunglasses and Sullivan was unable to tell whether it was a man or a woman. Sullivan fired a shot and he and Bova started to chase the robber. Sullivan fired another shot and then was told by Bova to return to the truck and secure its contents. Sullivan returned to the truck, secured it, and went into the Hood building to check on Glendinning. He found him, mortally wounded, sprawled on his back on a landing between the first and second floor.

Mr. Bova, meanwhile, continued his chase of the robber. During the chase the robber either lost or discarded the suitcase, a wig, sunglasses and a pair of women's shoes. He saw the robber run out a door of the Brownell building, jump into a station wagon and drive off. Bova testified that the Honda motorcycle that he had seen in the Brownell driveway had disappeared when the robber drove off in the station wagon. The station wagon was later found abandoned in the Eagle Park section of Providence. It had blood stains on the side panels. Within a few hours of the

robbery Palmigiano, wounded in his left arm, was arrested at a relative's house.

At the trial, Dolores Robideau, a Hood employee, testified that she saw Glendinning, whom she knew, go up the stairs, holster his gun, and stop at the second landing. She stated that she saw a person wearing grey pants pointing a gun at Glendinning. She testified that she then ran out and told Sullivan about the holdup. She was unable to identify the person holding the gun.

Raymond E. Shawcross, a state employee, testified that he saw a person who appeared to be a woman carrying a suitcase and being pursued by what appeared to be a policeman. He later saw a man, dressed as a woman, driving the station wagon out of the Brownell driveway. He identified the driver as Palmigiano.

Kenneth E. Turn, Jr., a Brownell employee, testified that he saw the station wagon leave the driveway and identified the driver as Palmigiano.

Ellis Newton, a Brownell employee, testified that he saw a person with a white helmet and dark jacket on a motorcycle blocking the driveway.

Gennaro Marsocci, an employee of the Registry of Motor Vehicles, testified that on April 10, 1969, he drove behind a Brink's armored truck and that a motorcycle was behind him. The operator of the motorcycle was wearing a white helmet and a dark jacket. He recognized the operator as Mastracchio, whom he had known for some 17 years. He testified that he saw the motorcycle make a U-turn near the Brownell building.

The defendant, Mastracchio, testified that on April 10, 1969, after having breakfast with his wife and children, he drove the children to school. He then proceeded to Standard Auto Body, Inc. on Pleasant Street in Pawtucket to have repairs made on a 1969 Pontiac, the property of his

sister, which he was driving. He testified that he arrived at the body shop at approximately 8 a.m. He further testified that he was back and forth between the market next door and the body shop until approximately 9:00 or 9:30 a.m. when Peter Gilbert, who had taken his motorcycle the previous evening for a tryout with a view to purchasing it, arrived with the motorcycle. Mastracchio, wearing his black leather jacket and white helmet, then left the body shop on his motorcycle and was proceeding to his home when he was apprehended and arrested.

Angelo P. Ricci, a sergeant of the Providence Police Department testified that on April 10, 1969, he heard a police radio report concerning a robbery at Hood's which informed him that "one of the fellas escaped on a motorcycle" and was wearing a white helmet and a dark jacket and that the motorcycle was a Honda. He remembered that two days previously he had seen defendant and Palmigiano riding a Honda motorcycle. He then testified that he went to the area of Admiral and Bradley Streets, and, after waiting approximately 30-40 minutes, he observed Mastracchio on a motorcycle heading up Admiral Street. He pursued him and placed him under arrest.

## I

The defendant contends that the testimony of Police Sergeant Ricci that he saw defendant riding a motorcycle with Palmigiano two days before the robbery was legally irrelevant. He argues that even granting that the testimony was logically relevant, its probative value was greatly outweighed by the undue prejudice it inflicted on defendant and, therefore, it was legally irrelevant.

The question of relevancy of evidence is addressed to the sound discretion of the trial court. Here Sergeant Ricci testified as follows:

"Two days previous to the robbery down Hood's I saw Mr. Mastracchio, Mr. Palmigiano at the corner of Vandewater and Sherwood Street and the motorcycle, the same motorcycle they gave over the air."

We can perceive nothing prejudicial in this statement and therefore find no abuse of discretion by the trial justice in the admission of the testimony of Sergeant Ricci.

The defendant next argues that the testimony of Sergeant Ricci that he had seen defendant riding a motorcycle with Palmigiano two days before the robbery was inadmissible since from this testimony the jury inferred that defendant and Palmigiano were planning the robbery, and from this inference inferred that they had committed this crime. We have reviewed the record and can perceive no basis for this contention by defendant. The argument advanced by defendant is purely speculative and is therefore without merit.

## II

The defendant next argues that it was error to admit the testimony of David F. Rylance into evidence since it caused great prejudice to defendant.

Rylance testified that between June and August of 1967 he met with defendant several times in Providence. At one of those meetings, defendant told Rylance of his plan to holdup an armored car delivering money to Hood's on Harris Avenue in Providence. He and Rylance drove to the area, stopped their car, and approached the main entrance. Mastracchio pointed out the building's glass-block windows and their propensity to obstruct visibility from within. He described the stairway leading from the entrance, the landing in the middle, and the area where a person would wait to intercept the guard before he entered the building. The defendant told of his plan to have a "plant" with a disguise waiting inside the building on a Thursday morning at 8:15, to holdup the guard while a

car with a driver and "look-out" waited outside to make the escape. Rylance's association with defendant ended shortly thereafter because Rylance was arrested for a bank robbery that took place during the period he was in Providence with defendant. The trial justice admitted this testimony as evidence of a plan to holdup an armored car delivering money to Hood's. The defendant argues that this testimony was nothing more than evidence of defendant's disposition to commit the crime of robbery and is clearly inadmissible.

We agree that evidence of a disposition to commit a crime or evidence of prior criminal conduct is inadmissible to prove the crime charged. *State* v. *Harris*, 89 R. I. 202, 152 A.2d 106 (1959); *State* v. *Durkee*, 68 R. I. 73, 26 A.2d 604 (1942); *State* v. *Horton*, 47 R. I. 341, 133 A. 236 (1926). However, an exception to this rule is that such conduct may be shown where it is connected with the offense charged in such a way that it tends to establish an intent, motive, plan, design or scheme. *State* v. *Mancini*, 108 R. I. 261, 267, 274 A.2d 742 (1971); *State* v. *Colangelo*, 55 R. I. 170, 173-74, 179 A. 147 (1935).

Mastracchio's plan as revealed to Rylance was nearly identical to the actual robbery at Hood's. There is no doubt that it tended to establish a plan to commit the crime charged. The remoteness in time between the revelation of the plan and the actual robbery affects only the weight of the evidence and not its admissibility.

We therefore hold that there was no error in admitting Rylance's testimony.

### III

The defendant next argues that the redirect examination of the state's witness, David Rylance, afforded the state an improper opportunity to introduce evidence of a prior criminal offense and denied defendant the right to a fair and impartial trial.

In cross-examining Rylance, defendant attempted to impeach his credibility by a prior conviction, and prior inconsistent statements. Rylance had previously been convicted in the United States District Court for the District of Rhode Island for robbing the Old Stone Bank on Elmwood Avenue in Providence in July of 1967. Rylance made the impeaching statements as a United States government witness in separate prosecutions against defendant and others for the same robbery. The defendant elicited testimony from Rylance that he had been convicted for the Old Stone Bank robbery, and Mastracchio had been acquitted. The defendant attempted to point out inconsistencies relating to the details of the association between Rylance and defendant from the end of June to August 22 of 1967, the period immediately preceding and following the Old Stone Bank robbery. It was Rylance's testimony on direct examination that during the same period of time defendant explained to him his plan to holdup the armored car delivery at Hood's. In effect, defendant implied that since he had been acquitted and Rylance convicted, a jury in the past had concluded that Rylance's testimony was not credible.

Upon redirect examination, the state, over defendant's objection, had Rylance explain the details of his association with defendant from the end of June to August 22 of 1967. This necessarily involved the details of the robbery of the Old Stone Bank.

The trial justice admitted this testimony into evidence to rehabilitate Rylance's credibility. Overruling defendant's objection, the trial justice stated:

> "We're not retrying that case. What we're concerned with is the relationship between these two people at a time in question. This witness has testified certain time between the end of June to August 22 in questioning yesterday and in cross examination attempted to cast doubt about the number of times that this wit-

ness had seen the Defendant Mastracchio and therefore I'm going to allow these questions."

The transcript makes it clear that it was defendant, and not the state, who introduced his prior prosecution as well as the details of the robbery itself. Once defendant opened up the door to this evidence in an attempt to impeach Rylance's credibility, he could not complain when the state followed with further testimony of a like character in clarification of what had been brought up on cross-examination. We are of the opinion that defendant has no just cause in complaining that in playing with fire he got burned. *State v. Bruni*, 79 R. I. 311, 88 A.2d 162 (1952).

## IV

The defendant next argues that the trial justice erred in instructing the jury that the testimony of David Rylance was to be treated as an admission, and maintains that such error caused him a specific prejudice.

The defendant objected to the direct testimony of Rylance. After overruling defendant's objection, the trial justice stated to the jury:

"The reason this evidence is admitted is that it is in the nature of admissions. A witness may testify as to what was told him by a defendant in a trial or what was done by a defendant in a trial and so it stands in the category of admissions and the jury may consider it in that light, determine whether it's true or not and if true in whole or in part, determine its weight and determine its use in trial."

The trial justice did not repeat this instruction in his final charge to the jury. However, defendant objected and excepted to the instruction, both at the time it was made and at the end of the final charge to the jury.

We agree that the trial justice erred in instructing the jury that Rylance's testimony was admissible as an admission. An admission is an acknowledgment by the accused

of certain facts which tend, together with other facts, to establish his guilt. 3 Wharton, *Criminal Evidence,* §694 at 496 (13th Ed. 1973). Mastracchio's explanation of his plan to Rylance was not such an acknowledgment because it occurred before the actual holdup.

However, the giving of an erroneous instruction to the jury will not constitute a ground for reversal where the accused has not been injured or prejudiced thereby. *State* v. *Reid,* 101 R. I. 363, 223 A.2d 444 (1966); *State* v. *Chavis,* 83 R. I. 360, 116 A.2d 453 (1955); *State* v. *Van Osten,* 68 R. I. 175, 26 A.2d 858 (1942). In this case, defendant was not injured or prejudiced by the trial justice's erroneous instruction to the jury. The evidence was clearly admissible. See Part II of this opinion, *supra.* The justice merely gave the jury the wrong reason for its admission.

Whatever prejudice or injury this may have caused was corrected by the trial justice's further instruction to "* * * determine whether it's true or not and if true in whole or in part, determine its weight and determine its use in trial." This is precisely what the jury would have had to do with Rylance's testimony if the justice had correctly explained to them that it was admissible as circumstantial evidence of a plan.

## V

The defendant contends that the trial justice's denial of his motions for severance constituted prejudicial error. He admits that severance is not a matter of right, but is within the sound discretion of the trial justice. And he concedes that denial of such a motion will not be reversed unless there has been a clear abuse of discretion. *State* v. *Patriarca,* 112 R. I. 14, 308 A.2d 300 (1973); *State* v. *Kieon,* 89 R. I. 320, 152 A.2d 531 (1959); *State* v. *Ballou,* 20 R. I. 607, 40 A. 861 (1898).

The denial of a motion for severance will not be reversed unless it is affirmatively shown that the defendant did, in fact, suffer prejudice sufficiently substantial to deny him a fair trial. *State* v. *Patriarca, supra.* The determination of prejudice involves the balancing of efficiency and convenience in judicial administration on the one hand against the defendant's right to a fair trial without prejudice on the other. *State* v. *Patriarca, supra.*

The defendant contends that the evidence against his codefendant was overwhelming while the evidence against him was meager, and that prejudice resulted because the jury was confused and unable to distinguish between the evidence against his codefendant and the evidence against himself. We cannot agree.

A fair reading of the record indicates that there was no confusion and there was sufficient evidence to convict defendant. The transcript reveals that during the trial the trial justice made proper cautionary instructions to the jury that certain evidence could be considered against one defendant only. And in his final charge to the jury, the trial justice first gave instructions on the indictments against Palmigiano, and then gave instructions on the indictments against Mastracchio. He made it clear that the state had to prove each of the charges against each defendant beyond a reasonable doubt, that different findings of fact had to be made against each defendant in order to convict on each indictment, and that evidence against one could not be used against the other. These instructions prevented any prejudice to defendant. Accordingly, the denial of severance was not error.

## VI

Finally, defendant contends that the testimony of the state's witness, Sergeant Ricci, was inadmissible hearsay evidence.

This same issue was raised on appeal by Mastracchio's codefendant, Nicholas Palmigiano, in *State* v. *Palmigiano*, 112 R. I. 348, 309 A.2d 855 (1973). In that case Mr. Justice Kelleher, speaking for this court, well related the substance of Sergeant Ricci's testimony. We reiterate that this testimony was not hearsay as it was not offered to prove the truth of the matter contained therein. *State* v. *Palmigiano, supra.* Accordingly, the trial justice's admission of this testimony into evidence was correct.

All of defendant's exceptions are overruled and the case is remitted to the Superior Court.

Joslin, J. did not participate.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Eugene F. Toro*, Asst. Public Defender, for defendant.