STATE OF NEBRASKA, APPELLEE, v. MICHAEL MOROSIN, APPELLANT.

262 N. W. 2d 194

Filed February 8, 1978. No. 41431.

James M. Kelley of Kelley & Thorough, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

Upon trial to the District Court, a jury having been waived, the defendant was convicted of assault with intent to inflict great bodily injury upon a 7-month-old child. The District Court sentenced defendant to 4 to 6 years imprisonment and defendant has appealed.

Jolene Stroud, age 21, and recently divorced, moved from Humboldt, Nebraska, to Lincoln, Nebraska, on July 29, 1975, accompanied by her infant daughter, Terri. Jolene and her baby moved into defendant's house with an arrangement that the defendant would provide food and lodging for them in exchange for Jolene's services as a housekeeper and in helping to take care of defendant's 3½-year-old son, when he was present, and of Herman Tapp, a 75-year-old man. The defendant was then 27 years old and employed as an attendant at a home for the elderly. Defendant had arranged through his employer to keep Herman Tapp in his house and to take care of him. During the period from July 29, 1975, to

August 16, 1975, these persons were the occupants of defendant's house.

Approximately a week after Jolene and her daughter had moved into defendant's house, Jolene began to notice injuries to her daughter. The injuries were inflicted during a 10 to 12 day period ending on August 15 or 16, 1975. On August 16, 1975, Jolene's parents took Jolene and the child to Humboldt, Nebraska, where the child was taken to the doctor who had previously attended her. He immediately took her to the hospital in Lincoln. There she was examined and X-rays were taken. The child had multiple bruises over her body; four small burns; a badly lacerated tongue; a severely burned hand; serious ulcerations of both eyes; four fractured ribs; and fractured right foot, right lower leg, and right forearm.

The pediatrician who initially examined the child at the hospital testified that in his opinion the bruises were 2 to 5 days old; the small burns were probably caused by cigarettes; the burned hand was probably caused by dipping the hand in a chemical or hot liquid; and the injury to the tongue was not more than 24 hours old, and could have been caused only by a sharp instrument. The fracture in the right foot was probably less than a week old. The fractures in the forearm and right leg were 2 to 3 weeks old. He could not express an opinion as to the age of the rib fractures. In the doctor's opinion, none of the injuries could have been self-inflicted. In his opinion, the injuries were not accidental, and any adult would have had the strength to inflict them.

Jolene Stroud's testimony was that the first time she noticed injuries to her daughter was approximately August 3 or 4, 1975, when she observed the baby's leg and wrist were swollen. When she inquired of the defendant whether he knew anything about the injuries, he told her that the baby "could have got her arm and leg twisted around the crib

railings." On August 12, 1975, the defendant brought the baby into the kitchen where Jolene was working and showed Jolene the baby's burned hand. Jolene put salve on the hand, wrapped it in gauze, and asked the defendant how the injury occurred. He responded that "maybe she got into some Vanish or something." On approximately August 14, 1975, the defendant was in the bedroom with the baby and Jolene was in the kitchen, when she heard the baby suddenly start to cry. The defendant came into the kitchen, threw something wrapped in Kleenex into the trash can, and said the baby had bitten her tongue. Jolene went into the bedroom, found fresh blood on the baby's sleeper and blankets, and discovered the injury to the tongue, although she could not see it very well. Jolene testified she never actually saw the defendant injure her daughter, but that neither she nor Herman Tapp were responsible for the injuries.

Herman Tapp testified that on one occasion he saw the defendant "stick the baby's leg through the rails on the bed and twist them." On other occasions he had seen the defendant bending over the crib and heard the child scream, but had not been able to see what the defendant was doing. Tapp also testified he had never seen Jolene injure the child and he himself had never done anything to harm the child.

The evidence indicates that both Tapp and Jolene were afraid of the defendant. Jolene testified that after her discovery of each injury to the child, the defendant urged her not to get medical treatment for the child, and that her fear caused her to wait. She admitted she did not go out or make a telephone call to seek medical aid for her daughter. She also testified the defendant told her she should not get medical care for the child because, if she did, the authorities would take her child from her. The evidence also shows Jolene Stroud's parental rights

were terminated on September 12, 1975, and she also served a sentence for child neglect.

The State called a child protective service worker for Lancaster County as a witness. Over objections that her testimony was incompetent and immaterial, she testified about an incident on June 18, 1975, when she was called to the LOMAR Human Development School in Lincoln, Nebraska, to examine some bruises on the back, buttocks, and legs of the defendant's 3½-year-old son, Michael Morosin, Jr. The child is deaf, blind, and unable to speak. The social worker was not able to determine the cause of the bruises, but she took a photograph of them, which was admitted in evidence over objections as to materiality and relevance.

The social worker also testified Michael, Jr., went back to stay with his father on August 1, 1975. On August 5, 1975, she went to the defendant's residence to make a home visit and, on that day, found Michael, Jr., with two black eyes and a scrape mark across his forehead. In answer to her question as to the cause of those injuries, the defendant said he thought Michael, Jr., had pulled some barbells down on top of him and caused the injury. The social worker at that time again removed Michael, Jr., from the defendant's home. On that visit, she also observed Terri Stroud, who appeared to have an injured leg.

The case was tried to the court without a jury. The court considered the testimony of the social worker as to Michael Morosin, Jr., and the photograph of him only as evidence of motive and intent. The court found defendant guilty and sentenced him to 4 to 6 years imprisonment.

The defendant's assignments of error are primarily directed to the admission of the testimony of the social worker as to the injuries to Michael Morosin, Jr., and the admission of the photograph of the injuries to Michael, Jr. The basis for defendant's objec-

tions is the assertion that the purpose of the evidence was to establish the bad character of the defendant, rather than for any limited purpose of establishing intent, or the absence of mistake or accident. The defendant argues that the evidence tended to prove the commission of other crimes by the defendant, and was, therefore, inadmissible under the rule which makes evidence of other crimes generally inadmissible in a criminal prosecution.

Rule 404 (2) of the Nebraska Evidence Rules, codified as section 27-404 (2), R. R. S. 1943, provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Rule 404 (2) is simply a restatement of previous Nebraska law. In State v. Casados, 188 Neb. 91, 195 N. W. 2d 210, this court stated the general rule that evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. We said: "One basic reason for the rule is that such evidence is apt to be given too much weight, rather than too little, by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged." In that case we also reaffirmed the rule that evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged.

In State v. Ray, 191 Neb. 702, 217 N. W. 2d 176, we held evidence of similar offenses is admissible where an element of the crime charged is motive, criminal intent, or guilty knowledge. We quoted

with approval from 1 Wharton's Criminal Evidence (11th Ed.), § 350, p. 520: " ' "Testimony of other similar offenses has been admitted to show intent where there is or may be, from the evidence, an inference of mistake, accident, want of guilty knowledge, lawful purpose, or innocent intent. Where an act is equivocal in its nature, and may be criminal or honest according to the intent with which it is done, then other acts of the defendant, and his conduct on other occasions, may be shown in order to disclose the mastering purpose of the alleged criminal act." ' "

The principle reflected in that statement is peculiarly applicable to child abuse cases. Evidence of intent, in such cases, is ordinarily circumstantial, and injuries to children are ordinarily claimed to be accidental and unintentional. That was the case here.

In child abuse cases the relevance of evidence of prior similar acts is obvious, and the prejudicial effect of such evidence is equally obvious. Section 27-403, R. R. S. 1943, provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Under balancing tests frequently employed under modernized or codified rules of evidence, the evidence in this case was admissible for the limited purpose for which it was considered. See 2 Weinstein's Evidence, United States Rules, § 404 (10), p. 404-66. This case was not tried to a jury and there were therefore no instructions. The record specifically shows, however, that the court treated the challenged evidence as admissible only for the limited purpose of proving motive and intent. That action was correct.

Defendant also asserts that because the evidence was circumstantial, it was insufficient to establish defendant's guilt beyond a reasonable doubt. A conviction may rest upon circumstantial evidence if it is

substantial. Here the evidence of the State was substantial and, if believed, was sufficient to sustain a finding of guilt beyond a reasonable doubt. In a criminal case it is not the province of this court to determine the credibility of witnesses or weigh the evidence. Where there is sufficient evidence to justify the verdict, the verdict will not be set aside on appeal unless clearly wrong. See, State v. Davis, 198 Neb. 823, 255 N. W. 2d 434; State v. Von Suggs, 196 Neb. 757, 246 N. W. 2d 206.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.