STATE OF NEBRASKA, APPELLEE, v. LAVERN E. PLYMATE, APPELLANT.

345 N.W.2d 327

Filed March 9, 1984.   No. 83-004.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Henry M. Grether III, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal of a judgment of conviction and sentence on a charge of sexual assault in the first degree.   Neb. Rev. Stat. § 28-319 (Reissue 1979). Upon conviction by a jury the court sentenced the de-

fendant to a term of from 7 to 12 years in the Nebraska Penal and Correctional Complex.

Two errors are assigned: (1) That the court improperly admitted into evidence, by stipulation of the parties, testimony that the defendant made admissions to a newspaper reporter concerning commission of over 300 sexual assaults; and (2) That the court improperly admitted into evidence hearsay testimony of prior acts of the defendant.

For approximately 2 weeks prior to May 1, 1982, the 12-year-old victim, hereby referred to as Terry, became acquainted with the defendant, LaVern E. Plymate. The evidence disclosed that the defendant was 43 years old at the time he first encountered Terry in Hanscom Park in South Omaha on April 23, 1982. Terry, his brother, and his mother were fishing at the Hanscom Park lagoon when they met Plymate. After a conversation the defendant and Terry went to a store, where defendant bought pop and bait and gave it to Terry. Shortly thereafter, on the same day, the defendant decided to buy Terry and his younger brother new fishing poles, more pop, and other fishing equipment. Terry again met Plymate in Hanscom Park the next day, and on the following day, while at the park with his brother and a friend, Plymate offered to take the three children to a movie. Also on that day he purchased a bicycle for Terry, and he promised to buy the other two boys bicycles later. The defendant and the three boys then went to a movie. Finally, on Saturday, May 1, 1982, Plymate and Terry met early that morning. The purpose was for Terry to accompany Plymate to a bar and grill, where Plymate worked, to clean out a cooler. Plymate purchased breakfast for the two. They then rode the bus to Wendy's Bar and Grill. While Plymate was cleaning the cooler in the bar, Terry played video games with money furnished by Plymate. Later, the two took a bus to a movie at Westroads shopping center, and defendant gave Terry additional money to play games at a

game arcade. The two then took a bus to the defendant's apartment. It was in the defendant's apartment that the alleged assault took place.

According to Terry's testimony, Plymate sat down next to him on a couch and began fondling Terry's penis. Plymate forcibly took Terry to his bedroom. While in the bedroom, the defendant exposed Terry's penis and sucked on it. During the act, Plymate evidently bit Terry's penis. When the act was completed, Terry was released and given $10 with directions not to tell anybody about what happened. The day after the assault Terry called his mother into the bathroom, where he was taking a bath, to show her the teeth marks the defendant left on his penis. Terry told his mother the happenings at the defendant's apartment. Monday, following the incident, when Plymate showed up at Terry's home, his mother called the police. The defendant was arrested and charged with first degree sexual assault.

No error is claimed in the jury instructions, nor is there an argument that the evidence is not sufficient to sustain the conviction. Defendant's principal complaint arises over a stipulation of certain facts which was entered into by the parties and received in evidence over the objection of defendant's counsel. The subject of the stipulation was a description of an interview an Omaha World-Herald reporter, Steven Stingley, conducted with the defendant shortly before April 12, 1981. In the interview, as published in the World-Herald, Plymate admitted to sexually assaulting more than 300 children prior to an incarceration in 1962. In giving suggestions for detecting, preventing, and coping with child molestation, Plymate described his approaches to the children. He stated that he gave all the children he molested a lot of money and gifts and that the children also liked to spend a large amount of time alone with him.

Neb. Rev. Stat. § 27-404(2) (Reissue 1979) of the Nebraska Evidence Rules provides that ''[e]vidence

of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Concerning the admissibility of such evidence, we have previously said: " '[I]t is a matter left to the discretion of the trial court as to whether the prior offenses are sufficiently similar to the one charged in the case on trial so that evidence thereof has probative value.' " (Emphasis omitted.) *State v. Ellis*, 208 Neb. 379, 393, 303 N.W.2d 741, 750 (1981).

In *State v. Hitt*, 207 Neb. 746, 749, 301 N.W.2d 96, 99 (1981), this court stated that "[s]exual crimes have consistently been classified as those in which evidence of other similar sexual conduct has been recognized as having independent relevancy, and courts generally hold that evidence of other sex offenses by the defendant may be admissible, whether the other offense involves the complaining witness or third parties."

If the issue in the instant case was simply the admissibility and connection of a 20-year-old crime with a current crime, we would have no hesitancy in declaring that it would not be sufficiently related in time that the probative value would outweigh the prejudicial effect. See *People v. Thomas*, 20 Cal. 3d 457, 573 P.2d 433, 143 Cal. Rptr. 215 (1978), where the court held, in a prosecution of a father for committing lascivious acts with his daughter and stepdaughter, that evidence that the father committed a similar act with another daughter between 10 and 18 years previously was not admissible.

We have here, however, a unique situation where the defendant, under the guise of giving advice to parents, is a self-admitted assaulter of over 300 children. In the defendant's statement, which was published less than 1 year from the date of this offense, he resurrects and makes current a plan or

scheme identical to that alleged in this case.

In *Irvin v. State*, 617 P.2d 588 (Okla. Crim. 1980), the defendant was convicted of first degree murder of an armored car driver. The court held that evidence the defendant had stated, 8 months prior to the offense, that he might be able to plan an armored car robbery and that whoever drove the vehicle would have to die was admissible as being indicative of defendant's plan and intent to commit the alleged crime. See, also, *State v. Mastracchio*, 112 R.I. 487, 312 A.2d 190 (1973).

In *State v. Desilets*, 96 N.H. 245, 73 A.2d 800 (1950), involving the commission of unnatural and lascivious acts committed upon a minor, evidence that the defendant used gifts, promises, threats, an assault, and false statements on prior occasions was admissible to show a plan by which the defendant " 'took the boy over.' " *Id*. at 247, 73 A.2d at 802.

Persuaded by the authorities cited herein, we hold that where a defendant has detailed a plan or scheme to commit a crime and ultimately carries out that plan or scheme, evidence concerning the same is admissible to show the defendant's plan and intent to commit the alleged crime.

The second claimed error is that of the admission of the evidence of a conversation between the victim and a friend in which the friend allegedly told the victim and others that the defendant "did this to some other boys, too." The statement, if offered to prove the truth of the assertion, was unquestionably hearsay and not admissible. However, Neb. Rev. Stat. § 29-2308 (Reissue 1979) provides in pertinent part: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence . . . if the Supreme Court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

The matter arose in the following context. The de-

fense counsel inquired of the victim whether a conversation between the victim, the victim's friend, the friend's father, and the victim's mother took place, possibly to impeach the credibility of the victim as to the reasons for the disclosure of the alleged assault. The apparent purpose of defendant's counsel was to raise the possible inference that the idea of calling the assault to the attention of the victim's mother was triggered by the conversation with the victim's friend. The prosecution then inquired, in an apparent attempt to rehabilitate the victim, what the conversation was. It is difficult to determine from the record the purpose for which the statement was offered. Even if the statement was hearsay, however, we conclude that it was harmless error. The defendant had previously admitted to being a sexual deviant of monstrous proportions, had willingly exposed his record, and had made it current to the public at large, and the prosecution quite properly brought that matter before the jury. The receipt of a hearsay statement concerning some other boys, too, must be considered, in view of the self-proclaimed offenses of the defendant, harmless, indeed.

Therefore, there being no error in the record sufficient to reverse, the decision of the trial court is affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. Over objection of defendant as to admissibility, statements made by defendant to a newspaper reporter in an interview in April 1981 were admitted into evidence. In the interview defendant stated that prior to an incarceration in 1962 the story of his life included more than 300 sexual assaults on children, and "How can you tell if your child is being molested? Maybe all children wouldn't act the same but all my victims did. From my experiences the child wanted to spend a lot of time alone with me and go everywhere I went. They started to rebel against their parents. They

brought home a lot of money and unnecessary gifts. The children were no longer cautious around strangers. They were too friendly."

In the case at bar defendant is not charged with being a person who has sexually assaulted many children. He is charged with the specific crime of sexual assault in the first degree on a 12-year-old boy on May 1, 1982. Defendant has pleaded not guilty, is presumed to be innocent until proven guilty, and is entitled to a fair trial.

The only possible basis for admitting the defendant's statement appears to me to be Neb. Rev. Stat. § 27-404(2) (Reissue 1979). The first sentence of that statute, in my judgment, describes exactly what this disputed evidence tends to prove in this case, and why such evidence is not admissible: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

To justify the admission of this statement, then, the statement must be fitted into the exceptions carved out of that statute. It must be determined that the statements were admissible as evidence which would establish proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In its brief the State contends that the statement was admissible because it showed "modus operandi" or "pattern of seduction," and because the statement bore on defendant's intent. My objection is that I think it is wholly improper to attempt to prove plan or intent by a general statement concerning general conduct 20 years before the specific crime at issue.

As set out in *State v. Ellis*, 208 Neb. 379, 390, 303 N.W.2d 741, 749 (1981): " 'The "other-crimes" rule is a rule of relevance and such evidence is ordinarily prejudicial because prior criminal activity is irrelevant to the proof of the commission of a specific crime. . . .' " See, also, *State v. Coca*, ante p.76, 341 N.W.2d 606 (1983).

Likewise, in *Ellis, supra* at 392-93, 303 N.W.2d at 750, this court quoted at length from *Sall v. State*, 157 Neb. 688, 61 N.W.2d 256 (1953): " 'The extent to which the discretion of the trial court will be allowed to be exercised in this regard has not been fixed by any decision of this court. Probably it cannot be but depends upon the facts of each case. . . . In State v. Siddoway, 61 Utah 189, 211 P. 968, it was held: "No exact limitation of time can be fixed as to when another offense tending to prove the intent of the act charged is remote. The decision of that question must depend upon the circumstances of the particular case, and whether evidence is too remote or not is a question whose decision is largely in the sound discretion of the trial court.". . .' "

I suggest that in the case at bar we have approved the extension of the time relevancy of "other crimes" to a period of 20 years. I think that is far too great a span of time and that the trial court abused its discretion in permitting the introduction of defendant's statements. There has to be some time that is too remote, and it seems that 20 years should qualify.

In this connection it is of interest to note that in *State v. Dandridge*, 209 Neb. 885, 890, 312 N.W.2d 286, 291 (1981) (a case where the defendant sought to introduce evidence of allegedly similar crimes committed while defendant was in custody), the State of Nebraska argued "that the subsequent robberies were too remote in time or not sufficiently similar to the Burger King robbery for the evidence to be admissible." The two robberies referred to occurred 2 months and 4 months, respectively, after the crime in that case.

Aside from the remoteness of the offenses, there appears to be another bar to the admission of defendant's statement. In *State v. Johnson*, 205 Neb. 778, 781, 290 N.W.2d 205, 206 (1980), we said, "Evidence of other crimes may be admitted in a criminal prosecution where the evidence is so related in time,

place, and circumstances to the offense or offenses charged as to have substantial probative value in determining the guilt of the accused." To the same effect in *State v. Coca, supra* at 80, 341 N.W.2d at 609, we said, "Evidence of other crimes is admissible where there are unique, almost 'signature-like' similarities between them and the offense charged, or the evidence is otherwise so related in time, place, and circumstances to the offense charged as to have substantial probative value in determining the guilt of the accused."

All the cases seem to refer to specific crimes at specific times and places. In the instant case, due to the generality of the defendant's admissions, there is no fair opportunity to make a judgment as to the "time, place, and circumstances" of the earlier offenses, or to fairly determine the "signature-like" similarities of the earlier offenses. Thus, it is impossible to make a fair judgment on the similarity of the earlier offenses to the instant case.

With regard to defendant's second assignment of error, in its brief the State summarizes its position by entitling that section as follows: "THE TRIAL COURT PROPERLY ADMITTED INTO EVIDENCE TESTIMONY BY THE VICTIM OF THE ASSAULT THAT HE OVERHEARD PERSONS SAY THE DEFENDANT HAD COMMITTED SIMILAR PRIOR ACTS." To read this statement is to conclude that the trial court indeed did err in this respect, and no more need be said except to determine whether the admission was "harmless error." The court's decision on that question is controlled largely by the fact that defendant's admission as to over 300 sexual assaults, committed 20 years before, rendered this particular error harmless, in that the improper hearsay testimony only involved an additional few boys. That logic may be sound, but since I believe the admission of defendant's statement was error, I do not have the predicate for the logical admission of this very prejudicial statement. There

is also the point that if the jury were at all inclined to think that perhaps events of 20 years ago were not dispositive of this case, then improperly admitted evidence of recent other crimes might well carry the day for conviction.

It seems that often when prosecutors for the State have a strong case, as they did in this instance, the temptation is irresistible to "paint the lily" and try to make the strong case overwhelming. I feel the function of the courts should be to keep the State's evidence in proper legal bounds and leave the matter to the jury for a decision not colored by improper evidence. I suspect the answer would be the same, without the necessity of bending the law out of shape, in order to avoid the retrial of a defendant who has established himself as a thoroughly despicable person.

I believe the trial court erred both in admitting defendant's statement and in admitting the hearsay testimony from the victim. I think both rulings were an abuse of discretion and constituted prejudicial error. The case should be remanded for a new trial.