STATE OF NEBRASKA, APPELLEE, V. EDGAR B. BAKER, JR., ALSO KNOWN AS "STUD," APPELLANT.
352 N.W.2d 894

Filed August 3, 1984.   No. 83-634.

208

Thomas M. Kenney, Douglas County Public Defender, and Victor Gutman, for appellant.

Edgar B. Baker, Jr., pro se.

Paul L. Douglas, Attorney General, and Lynne Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

WHITE, J.

Appellant, Edgar B. Baker, Jr., was convicted after a jury trial in the district court for Douglas County, Nebraska, of both counts of a two-count information: attempted first degree sexual assault and false imprisonment in the first degree. The trial judge sentenced the appellant to a term of from 3 to 5 years on count I and a concurrent term of 2 years on count II, with credit for 202 days served in the county jail.

Appellant assigns as the single error in this court that the district court erred in overruling defendant's objections to the testimony of Jacquie B., Desiree L., and Helen O. because the purpose of such testimony was to present evidence of other crimes, wrongs, or acts by the defendant, in violation of Neb. Rev. Stat. § 27-404(2) (Reissue 1979).

A recitation of the facts is necessary for a resolution of this case. At the time of the incident on January 20, 1983, the complaining witness, a 19-year-old female, was a student at the Capitol Beauty School located in downtown Omaha, Nebraska. Her schoolday generally started at 8:30 a.m. and ended in the late afternoon. As was her custom, the complainant was waiting for Metro Area Transit bus No. 3 at the corner of 45th and Wirt Streets, expecting to catch the 7:48 a.m. bus.

Shortly before the bus was due to arrive, the appellant, hereafter Baker, driving a 1973 blue Ford Thunderbird, stopped in the vicinity of the bus stop, spoke to the complainant, and asked her if she needed a ride. Baker was the sole occupant of

the car. Baker stated that he was planning to go to the Woodmen Tower in downtown Omaha and could give the complainant a ride. The complainant accepted. After proceeding a couple of blocks the complainant testified that she asked Baker what his name was, to which he replied, "All the ladies call me Stud." At that point the complainant looked over and noticed that the defendant had pulled his penis out and was masturbating. Baker then suggested that they stop the car for the purpose of having sexual relations. The victim refused, and repeatedly stated that she had to go to school. Baker appeared to be driving in a direct route downtown; however, he then drove past the downtown exit of the Interstate. Baker continued urging the complainant to engage in sexual relations with him, and she continued to refuse. Baker ultimately drove to Hanscom Park, where he stopped the car and attempted to force the victim to engage in fellatio. The victim resisted. Baker then took her hand and masturbated until he climaxed. He then drove the complainant to school.

Complainant testified that she did not try to leave the vehicle because she did not think she could successfully get away from Baker. Rather, she testified that she tried to talk him out of engaging in sexual relations by indicating that she had to get to school, but she would see him at a later time.

In contrast, Baker testified that at 7:40 a.m. on January 20, 1983, he was returning home after driving his wife to work at Mutual of Omaha. He decided to return downtown to run errands. A woman, the complainant, who was walking on the sidewalk gestured at him, so he asked her if she wanted a ride. She accepted, and then began fondling his genitals to stimulate him. Baker testified that he drove to Hanscom Park because the woman had expressed a desire to engage in sexual relations. At the park, according to Baker, she continued fondling him until he climaxed. He denied any attempt to force the victim to have oral sex. He testified that he then drove her to school.

The testimony of the three minor girls was offered and received over Baker's objection; it can be summarized as follows.

Jacquie B., a 14-year-old student at Monroe Junior High School, was walking to school at approximately 7 a.m. on the

morning of December 13, 1982, where she intended to meet a friend, Desiree L. As she approached the school, located at 52nd and Bedford Streets, a car, which she described as a blue LTD four-door, drove up to her. There was one black man in the car who told her that his name was "Stud." He then asked her if she wanted to come over to his house for about 20 minutes. She declined and said she was going to school. The car drove off, and Jacquie found her friend, Desiree L., to whom she explained the incident. Jacquie saw the car again that day and pointed it out to Desiree, who wrote down the license plate number. Jacquie identified Baker both in the courtroom and in a previous photo array as the man in the car who had called himself "Stud."

Desiree L., also a 14-year-old student at Monroe Junior High School, testified that she went to school at approximately 7 a.m. on December 13, 1982, to meet Jacquie B. Jacquie told her that some guy had tried to pick her up, and then pointed the car out to her when she saw it again. Desiree testified that the driver of the car was a black man with a mustache who was alone in the vehicle. She wrote down the license plate of the vehicle, which she testified was "1-ND870."

Desiree further testified that on January 19, 1983, she saw the same car with the same license number on approximately 48th and Maple Streets at about 3 p.m. as she was walking home from school. The same person as the one she saw on December 13, 1982, was driving the car. The man in the car said to her, "Hey, Baby, get in my car." She kept on walking.

Helen O. was a 16-year-old student at Benson High School. At approximately 3:30 p.m. on January 10, 1983, at 50th Avenue and Maple Street, as she was walking home from school, a car approached her, turned into a side street, and stopped. The driver asked her if she would like a ride home. She declined, and the driver said that his name was "Stud" and he was lonely so he would like to spend some time with her. She again declined and kept on walking. The man was black; he had a mustache and the car was a dark color. Two days later, while she was walking home, she saw the same car driven by a man who appeared to be the same. She wrote down the license number of the car, which was "1-ND870."

Defendant testified that he drives a dark blue, two-door Ford Thunderbird with license number Nebraska 1-ND870.

The incidents established by the testimony of Jacquie B., Desiree L., and Helen O. all took place within a few blocks from where Baker picked up the complainant. The incidents all took place shortly before the acts leading to Baker's conviction, in a time frame of from 5 weeks to 1 day before the crimes charged. All three girls were between 5 feet and 5 feet 4 inches in height, with a medium or slender build. The victim was approximately 5 feet 5 inches tall and weighed 105 pounds. She was wearing a parka and carrying a sack and a tote bag. There are three schools located within two blocks of the location where Baker offered her a ride. Baker told the victim that she looked younger than 20, and he spoke to her as though she were a child.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

§ 27-404(2).

As we observed in *State v. Morosin*, 200 Neb. 62, 67, 262 N.W.2d 194, 196-97 (1978):

> Rule 404(2) is simply a restatement of previous Nebraska law. In State v. Casados, 188 Neb. 91, 195 N.W.2d 210, this court stated the general rule that evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. We said: "One basic reason for the rule is that such evidence is apt to be given too much weight, rather than too little, by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged." In that case we also reaffirmed the rule that evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged.

In *State v. Plymate*, 216 Neb. 722, 725, 345 N.W.2d 327, 329

(1984), this court quoted with approval from *State v. Hitt*, 207 Neb. 746, 301 N.W.2d 96 (1981):

"[S]exual crimes have consistently been classified as those in which evidence of other similar sexual conduct has been recognized as having independent relevancy, and courts generally hold that evidence of other sex offenses by the defendant may be admissible, whether the other offense involves the complaining witness or third parties."

In *Plymate* we approved the reception of a description of an interview wherein the defendant admitted some 300 or more sexual assaults on children and described in detail the seduction of the children. The details closely corresponded with the evidence in the principal crime.

In *Hitt, supra*, we held as admissible proof of previous and continuing sexual contacts with a brother of the complainant.

For recent nonsexual crimes where we have held admission of other criminal acts admissible, see *State v. Harper*, 208 Neb. 568, 304 N.W.2d 663 (1981) (admission of previous assault of a victim by shotgun in prosecution for murder and assault by poison); *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981) (admission of attempted sexual assault of another at or near the scene where the victim of the crime—manslaughter—was found); and *State v. Morosin, supra* (admission of photographs and testimony of social worker of injuries to $3^1/_2$-year-old son in custody of defendant charged with child abuse of 7-month-old child).

Though the trial court limited the evidence received to the jury's consideration for the purpose of determining the motive and intent only, the evidence was clearly admissible to establish preparation, plan, and identity as well as motive and intent.

Generally, the admissibility of evidence of other crimes lies within the sound discretion of the trial court. *State v. Ellis, supra*. We find that the reception of the relevant evidence was not prejudicial to Baker when compared with its probative effect. We therefore affirm.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority opinion in this case. In my view there was no basis upon which

the testimony of the three students could have been admissible in evidence under the provisions of Neb. Rev. Stat. § 27-404(2) (Reissue 1979).

As noted by the majority, evidence of other crimes for the purpose of proving the defendant's propensity to commit such crime is inadmissible. Section 27-404(2) specifically provides in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Only if the evidence is offered as an exception to the general rule is it admissible. Section 27-404(2) goes on to provide: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In view of the nature of the crimes charged, issues such as motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident were not at issue, and the evidence of the three students would have been totally irrelevant if offered to establish any of those elements.

The State argues, however, that it had the burden of establishing identity and, therefore, the evidence of the three girls was admissible to establish identity. I agree that the burden was upon the State to establish and prove identity; I do not believe that the testimony of the three girls was either necessary, relevant, or admissible to prove identity. It could only prove propensity to commit a crime.

In the first instance, counsel for Baker admitted to the jury in his opening statement that there was no dispute about the act having taken place, the dispute simply being over whether it was consensual. Additionally, the victim herself testified for the State in its case in chief, identifying Baker as the individual with whom the alleged act was committed. That testimony was more than sufficient to make a prima facie case.

Courts which have considered the matter of evidence of other crimes to prove identity have recognized that more than a mere similarity in the classification of the acts and attendant circumstances must be shown or the evidence is simply not relevant within the meaning of the act. In the case of *People v. Guerrero*, 16 Cal. 3d 719, 548 P.2d 366, 129 Cal. Rptr. 166

(1976), the California Supreme Court had before it for review a judgment of conviction for first degree murder. In determining that evidence of a prior uncharged rape involving a different victim was inadmissible, the California court said at 725, 548 P.2d at 369, 129 Cal. Rptr. at 169:

> On the issue of identity the evidence of the Lopez crime is not only cumulative, it is also irrelevant. Few of the asserted similarities between the Lopez and Santana offenses aid in placing defendant at the scene of the alleged murder. . . . If the victim had been attacked in a distinctive manner that was identical to a previous crime defendant had committed, then the evidence of the other crime might have probative value. But the only claimed connection that has any logical relevance is evidence of "sexual activity" in both cases and the possible use of a wrench. Even if both facts were established . . . it could not reasonably be claimed that the two offenses were committed in a particularly distinct manner that tends to inculpate defendant.

There was simply nothing unique about the manner in which the crime charged was committed to bring it within the "identity" exception to § 27-404(2).

Federal courts which have reviewed the question of identity under the federal act similar to § 27-404(2) have generally held that mere similarity does not establish identity so as to permit the introduction of other crimes, acts, or wrongs for the purpose of establishing identity. Rather, the act must bear such a high degree of similarity as to mark it as the handiwork of the accused, much like a fingerprint. See, *United States v. Silva*, 580 F.2d 144 (5th Cir. 1978); *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977); *United States v. Solomon*, 490 F. Supp. 373 (S.D. Ga. 1980). It is generally held that unless the crime is so distinctive in nature that there is a reasonable likelihood that it could not have been committed by anyone else, the admission of such evidence only establishes the accused's propensity or disposition to commit a crime and is, under the clear language of the rule or state statutes, irrelevant and inadmissible. Anything less would seem to totally eliminate the prohibition of § 27-404(2). For a full discussion on the matter, see Krivosha,

Lansworth, Pirsch, *Relevancy: The Necessary Element in Using Evidence of Other Crimes, Wrongs, or Bad Acts to Convict*, 60 Neb. L. Rev. 657 (1981).

This general view is consistent with the decisions of our court, although admittedly there have occasionally been decisions to the contrary. In *State v. Casados*, 188 Neb. 91, 195 N.W.2d 210 (1972), we examined the purpose of the rule prohibiting the introduction of other crimes, wrongs, or acts, and said at 95, 195 N.W.2d at 213:

> "One basic reason for the rule is that such evidence is apt to be given too much weight, rather than too little, by the jury, thus resulting in the conviction of a defendant because he is a bad man and not because of his specific guilt of the offense with which he is charged."

And in *State v. Franklin*, 194 Neb. 630, 642-43, 234 N.W.2d 610, 617-18 (1975), we said:

> The defendant's third assignment relates to the admission of the park caretaker's testimony that the defendant had committed another act of sodomy with a different person 3 weeks prior to the act charged. It is the usual rule that in a criminal prosecution evidence of crimes committed by the accused, other than that with which he is charged, is not admissible. State v. Brown, 190 Neb. 96, 206 N.W.2d 331. An exception to the above rule is that evidence of similar offenses is admissible where an element of the crime charged is motive, a particular criminal intent, or guilty knowledge. State v. Ray, 191 Neb. 702, 217 N.W.2d 176; State v. Young, 190 Neb. 325, 208 N.W.2d 267; State v. Rich, 183 Neb. 128, 158 N.W.2d 533. The State concedes that no such motive, criminal intent, or guilty knowledge is an element of the crime here charged. Another exception to the general rule is that in prosecutions for rape, incest, and sodomy, testimony that the defendant committed the same or similar acts against the prosecutrix is admissible for its corroborative value. Smith v. State, 127 Neb. 776, 257 N.W. 59. Evidence of similar crimes with third persons is not admissible. Henry v. State, 136 Neb. 454, 286 N.W. 338; Nickolizack v. State, 75 Neb. 27, 105 N.W. 895.

The evidence of alleged other crimes, if indeed the testimony established a crime or bad act, offered in this case does not fall within the generally recognized exception for establishing identity. None of the witnesses could do more than testify that a black man with a mustache, driving an automobile having a license plate identical with the automobile owned by Baker, asked each of the witnesses whether she wanted to go for a ride. Such evidence does not identify the defendant as one charged with the crime of attempted first degree sexual assault or false imprisonment in the first degree. We have simply permitted the introduction of evidence tending to show Baker's propensity to potentially commit a crime, in order to show he is a "bad man."

While the evidence, absent that offered by the three witnesses, was more than sufficient to establish Baker's guilt, it cannot be said to have been harmless error. As we noted in *State v. Atwater*, 193 Neb. 563, 565-66, 228 N.W.2d 274, 275 (1975):

> The evidence against the defendant was more than adequate. Possibly in the past we have been too lenient in excusing these transgressions under the guise of harmless error, and the prosecution has concluded that anything goes. Defendants must be given fair trials, and it is the responsibility of the prosecution to see that each defendant receives one. Harmless error is intended to cover those inadvertent slips, which occasionally creep into a hotly contested trial, which do not severely prejudice the rights of the defendant. Harmless error should never be applied in those instances where the prosecution deliberately, or because of very careless procedures, injects prejudicial error into the proceedings.

By affirming this conviction we have advised the prosecution that it may introduce evidence of any other crime, wrong, or act if it can in any manner be suggested that it has some relevance, even with regard to facts not in issue. I believe that we have effectively repealed the provisions of § 27-404(2) and that we should not do so. For that reason I would have found that the introduction of the testimony objected to by Baker was prejudicial error.

GRANT, J., joins in this dissent.