IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. EARITH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAIME L. EARITH, APPELLANT.

Filed October 29, 2019.    No. A-19-013.

Appeal from the District Court for Lancaster County, ANDREW R. JACOBSEN, Judge, on appeal thereto from the County Court for Lancaster County, LAURIE J. YARDLEY, Judge. Judgment of District Court affirmed.

Joe Nigro, Lancaster County Public Defender, and Brittani Lewit for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Jaime L. Earith appeals from her conviction for second offense theft by shoplifting in the amount up to $500. During her jury trial, the county court admitted evidence of a prior shoplifting conviction committed by Earith. Following Earith's conviction and sentencing, she appealed to the district court which affirmed the county court's judgment. Earith now appeals, contending the district court erred in affirming the county court's findings that (1) evidence of a previous theft committed by Earith was admissible and (2) there was sufficient evidence to support her conviction. For the reasons set forth herein, we affirm.

- 1 -

STATEMENT OF FACTS

Nathan Svitak, an asset protection manager for Walmart, testified that while working at Walmart on July 27, 2017, he noticed Earith and her husband, Randy Earith, purchasing items in the self-checkout aisle. Svitak testified he noticed that Earith was looking around nervously, almost in a panic. In accordance with his training, while Earith and Randy were checking out, he observed the items in Earith's cart and testified that one of the items was a Coleman stove. After Earith finished checking out and left the store with Randy, Svitak followed them to their car and photographed the license plate. Svitak then returned to the store and obtained a copy of Earith's electronic receipt and surveillance video of Earith and Randy while they were inside the store. The video showed Earith and Randy in the housewares department in an area obstructed from the view of the surveillance camera for approximately 3 minutes. Svitak testified this area of the store contains low-value items, including ice cream scoops and can openers.

Svitak compared the video showing the items Earith scanned with the items listed on her electronic receipt. Svitak testified the first item scanned by Earith was a pair of jeans, which was listed on the electronic receipt as an ice cream scoop. Svitak testified the second and third items scanned by Earith were articles of women's clothing; however, it appeared as if Earith scanned the same tag twice. These two items were listed on the electronic receipt as ice cream scoops. The fourth item scanned was macaroni salad which was properly listed on the electronic receipt. The fifth item scanned was a canned grocery item that was listed on the electronic receipt as an ice cream scoop. The sixth item scanned was difficult for Svitak to see on the video, but he testified it was not an ice cream scoop as was depicted on the electronic receipt. The seventh item scanned was a bottle dispenser which was properly listed on the electronic receipt. The next item that Earith appeared to scan was a Coleman stove; however, there was no Coleman stove listed on Earith's electronic receipt suggesting the item was not actually scanned. The eighth item scanned was a lint roller which was properly listed on the electronic receipt. The ninth and tenth items scanned were packages of pepper jack cheese which again properly matched the electronic receipt. The eleventh item scanned was only identified by Svitak as a packaged item but was listed on the electronic receipt as a pan scraper; however, Svitak testified that the item was not a pan scraper because the item scanned was not a small, fluorescent-colored piece of silicone. The last two items scanned by Earith were a package of hot dog buns, which was properly listed on the electronic receipt, and a package of hamburger buns, which was not listed on the electronic receipt. The total cost listed on the electronic receipt was $20.84. Earith then finalized the transaction by paying $21 in cash and receiving change. After taking her change, Earith removed 14 items from the store.

One of the unpaid items Earith removed from the store was the Coleman stove. Svitak testified he printed a training receipt showing that the Coleman stove was priced at $18.78. Svitak located the Coleman stoves in the store and observed the area was well "zoned," meaning the items were pulled to the front of the shelves, but stated there was a void among the stacked stoves suggesting one of the Coleman stoves had been removed. Svitak also went to the area of the store containing ice cream scoops and observed that some of the tags on the ice cream scoops were missing. He testified one ice cream scoop still had the white residue from the tag stuck to the back of it, but the barcode was missing from the tag. Svitak testified he has never observed a patron

incorrectly scan five separate items as one identical item unless shoplifting was involved. Svitak further testified manufacturers send merchandise with tags already on the items. After verifying Earith had not properly paid for the items, Svitak reported the incident to police.

Lincoln Police Officer Scott Arnold investigated the incident. Arnold testified that after confirming Earith's identity, he went to Earith's residence. Upon arrival, Arnold saw a vehicle matching the vehicle and license plate number provided by Svitak. Arnold approached a man sitting in the vehicle who told Arnold the vehicle belonged to Earith. Arnold observed Walmart shopping bags containing merchandise in the vehicle. Arnold testified he then issued Earith a citation for theft.

Earith called Randy as a witness for her defense. Randy testified they were planning a camping trip and went to Walmart to purchase items needed for the trip. Randy testified that at the self-checkout, his posttraumatic stress disorder and anxiety caused him to pressure Earith to quickly scan the items so they could leave the store. Randy testified he believed Earith scanned everything and that if he had noticed something was not scanned, he would have said something. Randy further testified that he was carrying $2,200 that day, so if something was not scanned he would have paid for it.

Earith likewise testified that she and Randy were planning a camping trip and went to Walmart to purchase supplies. Earith testified that while at the self-checkout counter, she listened for the beep when items were scanned but did not look at the register's screen. Earith testified she heard a beep for every item she scanned. Earith testified that if she had known an item was not scanned, she would have notified a store employee of the problem, so that it could be corrected. Earith was asked whether in her prior experience she had any item ring up cheaper than the actual price, and Earith responded, "[w]hether it's in my favor or not is irrelevant. The fact that the price that it's supposed to be is what needs to be paid." Earith testified that in past instances where discrepancies occurred, she followed up with the store. Earith was also asked if she had experience with an item not scanning, to which she stated, "anytime something did not scan . . . I know that I would do my best to correct it." Earith also testified that she believed she scanned everything, did not switch price tags, and did not intend to pay a lower price for any item.

After the defense rested and outside the presence of the jury, the State argued that in light of Earith's and Randy's testimony, the State was entitled to offer evidence of Earith's prior theft conviction as rebuttal to establish an absence of mistake and for impeachment. This issue was previously raised with the court in a pretrial Rule 404 hearing. See Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 2016). Defense counsel objected for the same reasons argued during the pretrial hearing, asserting the evidence was being offered for an improper purpose, i.e. to show propensity. The county court determined:

> Ms. Earith opened the door when she basically said, "I'd take it back if I knew I hadn't paid for it." She went on and on and on. I think it comes in as impeachment, not to prove -- not 404, but she got up to the stand and said, "If I knew about it, I would take it back. I would always do that." So, I think she opened the door.

In response, defense counsel requested the judge provide a limiting instruction to the jury.

During rebuttal, Scott Medina, a loss prevention leader at Shopko, testified Earith and Randy concealed items at Shopko in 2015. Medina testified that the Shopko incident involved Earith and Randy proceeding to the registers, followed by Earith going to the restroom while Randy purchased some hangers and soda. Officers detained Earith and Randy and found that Earith concealed jewelry on her person and a dash camera and shower curtain in her purse. Medina testified that items were also recovered on Randy.

Later, while referring to Medina's testimony, the county court stated:

[Y]esterday I ruled that it came in for impeachment, but, under further consideration, the Court is deciding I am going to let it in under 404 and for impeachment purposes: 404 to show "had the intent or knowledge, or absence of mistake or accident, to commit the theft of shoplifting by a shoplifting charge." So that is the court's ruling.

After closing arguments, the county court gave the jury instructions, including the following limiting instruction:

Members of the jury, the evidence that Ms. Earith may have shoplifted from Shopko has been received only for the limited purpose of helping you to decide whether Ms. Earith had the intent or knowledge or absence of mistake or accident to commit the Theft by Shoplifting charged. You must consider the evidence for that limited purpose and for no other, except as set forth in Instruction number 10.

The jury found Earith guilty of theft by shoplifting with the property involved in the theft valued at $45. At an enhancement hearing held a short time later, the county court noted Earith was previously convicted of burglary and found Earith guilty of "theft by shoplifting, subsequent offense." The court then sentenced Earith to 30 days in jail.

Earith appealed to the district court contending that the county court erred in admitting into evidence the previous theft committed by her and alleging that the evidence was insufficient to support her conviction. The district court affirmed the county court finding, specifically, that (1) the Rule 404 evidence was admissible and the county court did not err in allowing the State to present evidence of Earith's prior shoplifting offense and (2) there was sufficient evidence to support Earth's second offense theft by shoplifting conviction.

ASSIGNMENTS OF ERROR

Earith argues the district court erred (1) in finding that the county court did not err in admitting evidence of a previous theft committed by Earith and (2) in finding that the evidence was sufficient to support her conviction of second offense theft by shoplifting.

STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Hatfield*, 300 Neb. 152, 912 N.W.2d 731 (2018). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's

inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* We review for abuse of discretion a trial court's evidentiary rulings on the admissibility of a defendant's other crimes or bad acts under rule 404(2). *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## ANALYSIS

### EVIDENCE OF PREVIOUS THEFT

Earith argues evidence of her prior shoplifting incident was not admissible at trial. We determine the evidence was admissible because it had independent relevance as to the issue of intent. Thus, we affirm the district court.

Section 27-404(2) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Please note that § 27-404 was amended effective September 1, 2019, but that amendment does not apply to this case.)

As the Nebraska Supreme court noted in *State v. McManus*, 257 Neb. 1, 4-5, 594 N.W.2d 623, 627 (1999):

By its plain language, rule 404(2) prohibits the admission of evidence of other bad acts for the purpose of demonstrating a person's propensity to act in a certain manner. However, as the second sentence of the above-quoted language indicates, the admission of other bad acts evidence is prohibited only if the relevance of such evidence is dependent upon the actor's propensity to commit the act. Stated another way, evidence of other bad acts which is relevant for any purpose other than to show the actor's propensity to commit the act is admissible under rule 404(2). Thus, rule 404(2) divides evidence of other bad acts into two categories according to the *basis of the relevance* of the acts: (1) relevant only to show propensity, which is not admissible, and (2) otherwise relevant (nonpropensity), which is admissible. Andrew J. Morris, *Federal Rule of Evidence 404(B): The Fictitious Ban on Character Reasoning From Other Crime Evidence,* 17 Rev. Litig. 181 (1998).

Here, Earith argues that the district court improperly affirmed the county court's erroneous ruling that evidence of Earith's prior shoplifting incident at ShopKo was being offered for a proper purpose and that this is a classic example of propensity evidence. In contrast, the State argues the evidence was offered to rebut claims and defenses made by Earith during trial and was otherwise relevant non-propensity evidence which was properly admitted with a limiting instruction. In order to properly address this assigned error, we must determine whether evidence of the 2015 shoplifting incident at Shopko was offered for a "proper purpose."

As the Nebraska Supreme Court stated in *McManus*: " Evidence that is offered for a proper purpose is often referred to as having 'special relevance' or 'independent relevance,' which means its relevance does not depend on its tendency to show propensity. . . . Thus, the term 'independent relevance' is synonymous with the term 'proper purpose.'" 257 Neb. at 8, 594 N.W.2d at 629 (citation omitted).

Here, Earith's defense to the charge of shoplifting was that she erroneously used the self-checkout counter and did not realize she underpaid for the items that she checked out. Stated differently, Earith argues that the failure to pay for the items she removed from the store was a mistake and that she lacked the intent to shoplift the items from the store. Accordingly, the State argues that evidence of the prior shoplifting incident at Shopko was not being offered to show Earith's propensity to shoplift, but was independently relevant to rebut her defense that she mistakenly failed to pay for her items and lacked intent to improperly remove them from the store.

In considering the "independent relevance" of other circumstances in relation to a defense of mistake or lack of intent, the Nebraska Supreme Court has held:

> """"Where an act is equivocal in its nature, and may be criminal or honest according to the intent with which it is done, then other acts of the defendant, and his conduct on other occasions, may be shown in order to disclose the mastering purpose of the alleged criminal act.""""

*State v. Morosin*, 200 Neb. 62, 68, 262 N.W.2d 194, 197 (1978).

The Nebraska Supreme Court then applied this rationale in *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012). In *Kofoed*, the defendant was accused of tampering with DNA evidence in a murder case. His defense was that his actions were the product of mistake and lack of intent. In order to rebut this defense, the State offered evidence of evidence tampering in a different murder case to show the current act was not a mistake or product of inadvertence but demonstrated the defendant's intent to commit the act.

We find the principles articulated by the Nebraska Supreme Court in *State v. Morosin* and *State v. Kofoed* equally applicable here. In doing so, we recognize that the act of self-checkout is equivocal in nature and the removal of products from the store without paying may be criminal or honest according to the intent of the actor. Under such circumstances, the intent of the actor who is actively defending on the basis of mistake may be shown through acts of the defendant and conduct on occasions to show the mastering purpose of the criminal act. In such occasions, the evidence is not being offered to show propensity, but is independently relevant to establish a lack of mistake. Although the former act here did not involve activities at a self-checkout counter, it demonstrated Earith's intent to shoplift which runs directly contrary to Earith's testimony that she

would not intentionally shoplift and would immediately remedy the situation if she ever discovered she had made a mistake. Under these circumstances, the court did not abuse its discretion in allowing the State to offer evidence of the 2015 shoplifting incident in order to rebut Earith's defense of mistake and lack of intent.

SUFFICIENCY OF EVIDENCE

In her next assignment of error, Earith argues that the district court erred in affirming the county court's determination that the evidence was sufficient to support her conviction of second offense theft by shoplifting.

In reviewing a sufficiency of the evidence claim, we do not pass on the credibility of witnesses--that is for the trier of fact. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Draper, supra*.

Earith was convicted of second offense theft by shoplifting in an amount up to $500. See Neb. Rev. Stat. § 28-511.01 (Reissue 2016), which provides in relevant part:

(1) A person commits the crime of theft by shoplifting when he or she, with the intent of appropriating goods or merchandise to his or her own use without paying for the goods or merchandise or to deprive the owner of possession of such goods or merchandise or its retail value, in whole or in part, does any of the following:

(a) Conceals or takes possession of the goods or merchandise of any store or retail establishment;

(b) Alters the price tag or other price marking on goods or merchandise of any store or retail establishment;

(c) Transfers the goods or merchandise of any store or retail establishment from one container to another;

(d) Interchanges the label or price tag from one item of a good or of merchandise with a label or price tag for another item of a good or of merchandise.

We determine there was sufficient evidence to support Earith's conviction. The evidence demonstrates that Earith took women's clothing, food, a bottle dispenser, a lint roller, other unidentified items, and a Coleman stove at the self-checkout counter at Walmart where she was obligated to pay for those products. The evidence further demonstrated that, instead of properly scanning all of the items, Earith completely failed to scan two items and scanned six items utilizing price tags for lower-priced items. The price tags actually used by Earith were obtained from products in an area of Walmart that Earith visited and the items utilized to switch prices showed evidence of tampering. At one point, Earith scanned the same price tag twice even though she was holding two different items, a tank top and shorts. Svitak testified that none of the twelve items scanned by Earith were ice cream scoops or a pan scraper despite those items appearing regularly on Earith's electronic receipt. Earith completely failed to scan the Coleman stove which was the most expensive item which she brought to the self-checkout counter.

At the end of Earith's transaction, the total amount shown on her receipt, and the amount Earith paid, was $20.84, which was less than one-half the total value of the merchandise which she removed from Walmart and nearly the price of the Coleman stove standing alone. While Earith claims she never noticed items were not ringing up correctly because she never looked at the register, the evidence contradicts this claim and shows she knew how much the transaction totaled because she paid in cash with a $20 bill and a $1 bill, which she would have known only by looking at the register. Taken together, there was sufficient evidence to support Earith's conviction beyond a reasonable doubt and the district court did not err in affirming the county court order of conviction and sentence.

## CONCLUSION

In sum, upon our review of the record we reject Earith's claims that the district court erred in finding that the county court properly admitted evidence of a previous theft committed by Earith and in finding that the evidence was sufficient to support Earith's second offense shoplifting conviction. Thus, the district court's order is affirmed.

AFFIRMED.